# SUPREME JUDICIAL COURT

### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM, 1822, AT LENOX.

PRESENT·

Hon. ISAAC PARKER, Chief Justice,
Hon. GEORGE THATCHER,
Hon. CHARLES JACKSON,    } Justices.
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE.

---

## ALDERMAN *versus* FRENCH.

The defendant in an action of slander pleaded the general issue, and also a special plea in justification, which was adjudged bad upon demurrer, in which he admitted the speaking of the words *Held*, that the special plea might be used upon the trial of the general issue, as evidence to prove the speaking. (1)

Evidence of the facts contained in the special plea, tending to show that the words spoken were true, or of other facts of the same tendency, or of a general report that the plaintiff was guilty of the crime imputed to him, cannot be received, upon such trial, in mitigation of damages.

After the decision upon the demurrer, it was within the discretion of the judge at the trial to grant or refuse leave to plead a new plea in justification.

THIS was an action of slander brought against the defendant for charging the plaintiff with having committed adultery with one Almira Crossen. The declaration contained several counts.

---

(1) Since altered by *St*. 1826, *c*. 107. See *Hix* v. *Drury*, 5 Pick. 296; *Cilley* v. *Jenness*, 2 N. Hamp. R. 90.

The defendant pleaded the general issue to the whole declaration. He also pleaded specially to the first count certain facts and circumstances which he alleged to be a bar, concluding that therefore he spoke the words in the first count mentioned. To this plea there was a demurrer, and at September term 1821, judgment was given upon the demurrer in favor of the plaintiff. At the trial in May term 1822, before *Putnam* J., upon the general issue, the plaintiff offered no other evidence than the special plea to prove the first count, and did not attempt to prove the other counts. The defendant contended that the plaintiff ought to have produced other evidence to prove the speaking of the words, but the judge ruled for the plaintiff as to that point. The defendant then offered to give in evidence, in mitigation of damages, the facts contained in the special plea, but the judge refused to permit him to do it. He then moved to withdraw the special plea and the demurrer, and to plead the truth in justification ; but this motion was overruled. He offered in evidence the deposition of one Curtis, as tending to prove that the words were not spoken maliciously ; but this evidence was rejected, on the ground that the words being actionable imported malice. He then offered to prove, that before he spoke the words there was a general report that the plaintiff had committed adultery with Almira Crossen, but this also the judge refused to permit. The jury found a verdict for the plaintiff, and the defendant moved for a new trial.

*Dwight*, in support of the motion, contended 1. That the special plea ought not to have been taken as evidence of the speaking of the words ; otherwise the intention of the statute of *Anne*, of double pleading, will be frustrated. Bac. Abr. Pleas, &c. K. 3 ; *Cary* v. *Jenkins*, 1 Str. 496 ; *Atkinson* v. *Atkinson*, 2 Str. 871 ; *Dunn* v. *Vacher*, ibid. 908 ; *Clinton* v. *Morton*, ibid. 1000 ; *Decosta* v. *Carteret*, Fitzg. 189 ; 1 Morg. Vade Mecum, 151. A defendant may be falsely charged with speaking what is true. He ought then to be permitted to plead the truth of the words, in order to avail himself of it, in case the plaintiff should give evidence of the speaking. The special plea is hypothetical ; It means, *If I spoke the words, they are true.* This case differs from *Jackson* v. *Stetson*, 15 Mass. Rep. 48, because there all the issues were issues of

fact. Here the special plea was adjudged ill upon demurrer, and was thereby rendered null. The jury had nothing to do with the special plea and it should have been laid entirely out of the case. 2. The special plea was used at the trial as a confession of the defendant, and not as a plea. The whole of it therefore should have been taken together, and every thing in it tending to mitigate the damages should have been taken to be true. 3. The defendant should have been allowed to prove in mitigation of damages, any thing which did not amount to a justification. 4. The defendant ought to have been permitted to amend his special plea upon the payment of costs or submitting to a continuance. The bad pleading was owing to the fault of the counsel, for which the party ought not to suffer. 5. Whatever may have been the state of the pleadings, the degree of malice was not a matter implied. It was competent for the plaintiff to offer evidence in aggravation of damages ; and the defendant was equally entitled to offer evidence in mitigation. The deposition of Curtis was admissible to show the actual degree of malice. 6. Evidence of the general report ought to have been admitted, because it would show the amount of injury, and the degree of malice. *Larned* v. *Buffinton*, 3 Mass. Rep. 546. In *Wolcott* v. *Hall*, 6 Mass. Rep. 514, there was a justification.

In the case at bar the defendant has been compelled to rely on the general issue, because the special plea was not a justification. If he had not attempted to plead a justification, the evidence would have been admitted.

*Whiting*, on the same side, as to the first point, referred to 2 Phil. on Evidence (*Dunlap's edit.*), 96, *note*. *Currie* v. *Henry*, 2 Johns. Rep. 437.

*Mills* and *Jarvis*, for the plaintiff, relied on the cases of *Jackson* v. *Stetson*, *Wolcott* v. *Hall*, and *Larned* v. *Buffinton*, before cited.

The opinion of the Court was read by *Wilde* J. at May term 1823, as drawn up by

JACKSON J. The first question is, whether the defendant's confession in his special plea to the first count ought to have been received as evidence that he did speak the words therein set forth. This question has been decided in the affirmative

*Alderman*
*v.*
*French*

Alderman
*v.*
French.

by this Court, in the case of *Jackson* v. *Stetson & ux.* 15 Mass Rep. 48 ; but as that opinion has been questioned in a note to a work now in general use, (2 Phil. on Evidence, 96,) and as the Court of Common Pleas in England have recently advanced opinions which appear to conflict with ours, the question may be considered as a proper subject of argument in this Court. Indeed, whenever a new question arises, and the opinion of the Court upon it is thought to be unsound or unquestionable, it may be considered the right, and sometimes perhaps the duty of counsel to present it again to the Court at the first opportunity ; because the continued acquiescence of the bar would otherwise furnish of itself strong evidence that the law was rightly settled at first.

It is important, in the first place, to ascertain precisely the point in question ; and this is the more necessary as the opinion expressed on the former occasion seems to have been much misunderstood. It is not a question whether any special plea in confession and avoidance amounts to an admission of the point traversed by the general issue. Our practice, as to pleading double, accords in general with that of other common law courts in the United States and in England ; and it could not be seriously believed that we intended, in this summary manner, to alter at once the whole practice in this particular. The question is confined to the case where the defendant directly and explicitly declares and alleges a certain fact, and afterwards in the same cause calls on the plaintiff to prove that fact. It applies not to pleas and averments, which are to a common intent inconsistent, but to such as are directly and in words contradictory to each other.

There is perhaps no other case but that of slander, in which the forms of pleading could give rise to this question. In debt on bond the defendant, after pleading the general issue, does not in his second plea say that " well and true it is that the said writing obligatory is his deed," and then proceed to allege that it was delivered as an escrow, or obtained by fraud or duress, or given on a usurious contract, &c. In trespass the defendant does not admit that he committed the trespass as alleged in the declaration, and then state the matter in justification. So in all the other cases of special pleas which are

properly joined with the general issue, it will be found, as we apprehend, that the forms do not require the defendant to allege or admit explicitly the fact which is traversed by the general issue, and that pleaders have always carefully avoided such an admission. It might be too much to say, that among the numerous conflicting cases to be found on this subject in the reports, there is no instance of such a misjoinder under the order for pleading double ; but we apprehend that there is no case (unless the action of slander be an exception) in which such pleading would be proper and necessary upon the true construction of the statute.

It is said in argument by Chief Justice *Mansfield*, in *Harrington* v. *Macmorris*, 5 Taunt. 233, that the defendant's language in one plea cannot be used to disprove another plea ; and he mentions, by way of illustration and proof, the action of trespass, when the defendant pleads not guilty and a justification, in which case he says the special plea would, if admissible, prove the act, in case the reason for the justification fails. The plea in such a case does indeed admit the act which the defendant attempts to justify ; but it does not admit the trespass and breach of the peace set forth in the declaration ; and in the conclusion of the plea the averment is, that the acts justified are the same *supposed* trespasses, &c. If the defendant were indicted for the same trespass, and should prove in his defence the same facts that are set forth in his special plea, he would necessarily be acquitted ; because those facts show that he did not commit any trespass or breach of the peace. If therefore the whole of such a plea were read in evidence by the plaintiff, as a confession or admission of the defendant, it would not prove the latter to be guilty of the trespass complained of ; and of course would not be sufficient evidence for the plaintiff on the general issue. So if the defendant had by parol, or by any other writing not making part of the same record, confessed that he did strike the plaintiff in his own defence, stating the facts substantially as they are set forth in such a plea, no one would suppose that such a confession would be sufficient evidence to maintain the general issue on the part of the plaintiff. If a man attempts to kill, maim, or beat me, and I do no more than is necessary to

1 *

Alderman
*v.*
French.

defend myself, I surely am not guilty of any crime, and can not be said to do him any injury. So in the action of debt on bond, where the defendant pleads any of the common bars which show that the bond is void, as fraud, duress, infancy, usury, or delivery as an escrow, he admits indeed that he signed and sealed *the writing*, but under such circumstances as made it inoperative or void ; and of course it is not his deed.

In slander the case is very different. The injury complained of is, that the defendant has deliberately published charges or reports injurious to the character or property of the plaintiff. When the defendant pleads the truth of the charge in justification of his conduct, the plea, if proved, does not show that the plaintiff's complaint is untrue, and that the defendant had not published the slanderous report. If the slander were in writing, and the defendant were indicted for it, the proof of all the same facts that are set forth in such plea would not be sufficient to acquit him on the indictment, as the like proof would in the case of trespass before mentioned. It is not sufficient that the charge is true, if published from mere malice, and for no sufficient reason. The defendant therefore, in his defence to the indictment, must prove not only that the charge is true, but that he published it " with right motives, and for justifiable ends." On what ground then is the mere averment of the truth of the charge a good bar to the civil action for the slander ? It is, that the plaintiff cannot justly complain of an injury to his reputation, of which he himself has furnished the occasion. The plea applies to the person of the plaintiff, showing that he is disabled to maintain the action, although upon general principles the defendant would otherwise be liable to it. It admits every material fact alleged by the plaintiff, but alleges a reason why he should not be permitted to maintain the action. We say every material fact, because although the declaration alleges that the words are *false* and *malicious*, yet the plaintiff is not bound to prove affirmatively that they are false and malicious ; but the mere proof of the speaking or publishing is sufficient to maintain his action, until some legal defence is proved by the defendant. The defence, under the plea that the words are true, bears a strong resemblance in

his respect to the plea of a release of the trespass complained of in an action of trespass. This latter is not allowed to be pleaded with the general issue ; undoubtedly because i contains a virtual, if not an explicit admission, that the defendant was guilty of the trespass. But a general release may be so pleaded, because it contains no such admission. *Prinnel v. Preston*, Barne's Notes, 351, *(3d ed.)* ; *Steele & al.* v. *Pindar*, ibid. 347. So when the defendant in slander pleads the truth of the words in justification, he explicitly admits the fact alleged against him, but says that for the reasons assigned in his plea the plaintiff cannot maintain the action. This same principle is applied also in assessing damages in the action of slander, when the defendant cannot prove the truth of the words. If through the fault of the plaintiff, the defendant had good cause to believe that the words were true, the jury ought to consider that misconduct of the plaintiff in mitigation of the damages. *Larned v. Buffinton*, 3 Mass. Rep. 546. If the plaintiff is guilty of still greater misconduct, and if, instead of merely furnishing reason to believe that he had done what was imputed to him, it is proved that he actually did it, this shall take away his right to damages altogether. This defence, therefore, in the action of slander, does not rest on the ground that the defendant did not do all that is imputed to him ; but admitting all that to be true, the defence is, that by reason of a distinct independent fact, which is set forth in the plea, the plaintiff is barred from maintaining the action. It follows then, from the nature and principles of pleading, that the defendant is bound to prove affirmatively this special bar to the action. The plaintiff's right to recover is explicitly admitted, but for the special matter thus set forth in the bar ; and until that matter is proved, the plaintiff's right remains unimpeached.

The difference between these two actions will further appear, by supposing that the defendant had by parol, or by some other writing not making part of the same record, confessed that he did speak the words set forth in the declaration because they were true ; stating the facts substantially as they are set forth in the common plea in justification, as it is called. Such a confession would unquestionably be sufficient evidence to maintain the general issue on the part of the plaintiff. We

have before seen that a similar confession of the matters con tained in a plea of justification in trespass would not maintain the general issue for the plaintiff in that action. And the same remark applies to pleas in confession and avoidance in most other actions, where such a plea is joined with the general is- sue, and, as we apprehend, to all others, in which the leave to plead double is rightly granted and properly exercised. It would be difficult, among the innumerable diversity of cases of double pleading, to find one (excepting this plea to the action of slander) in which the second plea contains a direct and ex- plicit avowal and confession of all that the plaintiff would be required to prove on the general issue, and such a confession as, if made out of court, or in any other writing, would be sufficient evidence for the plaintiff on the general issue.

If we examine the real nature and circumstances of the case. independently of technical rules and forms of pleading, we shall be led to the same result. The plaintiff complains, for exam- ple, that the defendant has charged him with the crime of lar- ceny. The defendant answers that it is true he did so charge the plaintiff, but that the latter has no right to complain of it, because the charge was true ; and then sets forth specifically the facts, which he offers to prove, to show that the defendant was guilty of larceny. The plaintiff denies all those facts. When they go to trial, and the defendant is called on to prove the larceny, he insists that the plaintiff shall first prove that he, the defendant, ever made such an accusation. If the plaintiff answers, that the defendant has not only confessed that fact, but has deliberately repeated the accusation on the record ; he is told that, as the defendant had leave to plead also the gen- eral issue, and has so pleaded, the action cannot be maintained without some other proof, that the defendant did accuse him of that crime ; and accordingly, for want of such proof, a verdict is given for the defendant. The consequence is, that by a subtle, arbitrary, technical rule as to pleading, the defendant may with impunity slander and defame the plaintiff more grossly than he was even supposed to have done when the ac- tion was commenced ; and this, because perhaps a witness who was expected to prove the slanderous words is dead, or absent, or canno repeat them precisely as they are set forth in

the declaration ; or because the plaintiff's counsel was inaccurate or care ess in the statement of the charge in the declaration. The record will contain a perpetual memorial that the plaintiff had been accused of a foul crime ; that this was done, not hastily and passionately, but deliberately and wilfully ; and that the person who charged him with the crime was ready and offered to prove it ; and that the plaintiff nevertheless had a verdict against him. The defendant's justification in an action of trespass inflicts no new wounds on the person of the plaintiff, but this plea in slander is not only a confession, but a repetition of the injury complained of, in a more aggravated form ; the wound is inflicted anew with more deliberate aim, and with more pernicious effect ; and yet the plaintiff is told that he can have no reparation, because it does not appear that he has ever been injured ; the court and jury can see no evidence that his reputation has ever been impeached, and as he has therefore sustained no damage, they can award him no compensation.

A rule that would lead to consequences which appear so preposterous and unjust, would certainly require for its support the most clear and unquestionable authority ; and if it should be found on examination to be so established, no court ought ever again to give leave to join such a plea of justification with the general issue.

This leads us to an examination of the authorities. The rule is to be established either by some adjudication expressly on the point, or by a continued course of practice for a long period, showing a common consent and general understanding to this effect. We have not been able to find any case in which this point is expressly settled. It is indeed stated in unqualified terms by Chief Justice *Mansfield*, in the case before cited from 5 Taunton, that the defendant's language in one plea cannot be used to disprove another p ea. But in laying down a general proposition we are not always led to consider all the possible exceptions and limitations to which it may be subject ; and it has often happened that such propositions, though stated by eminent judges and lawyers, and admitted at first as universally applicable and true, have, when afterwards applied to a particular case that had not been previously considered, been found to require some quali-

fication or limitation. We are always permitted, and not un-frequently find it necessary, in reading our books of reports, to confine the authority of any decision to the particular point or action then before the court. The judgment may be right, when some of the reasons assigned for it may be unsound, or may be laid down too broadly. The attention of the court is naturally drawn particularly to the case before them ; and though all that is said by them may be correct as applied to that case, yet when applied to another, not then under consideration, it may, if adopted literally and in its whole extent, lead to results which the court did not anticipate, and would not have approved. Another remark may be made with reference to the case last cited, which applies more directly to the point we are now considering; and that is, that the court do not profess to be establishing the rule in question, but speak of it as a thing already established by every day's practice. Now if it should appear, as we apprehend it will, that this practice has never been extended to the action of slander, and that on sound principles it ought not to be so extended, the case cited will have no application to that now before us.

There is another class of cases which may be supposed to bear on this point, and which therefore require to be considered ; and those are cases in which the record is brought before the court on demurrer, or motion in arrest of judgment, and not before the jury on the trial of an issue of fact. Thus in *Grills* v. *Mannell*, Willes, 378, the plaintiff had pleaded two distinct bars to an avowry, to which the defendant demurred. The first was held to be bad, and the plaintiff would have removed the objection by an averment contained in the second ; but the court said that one plea cannot be taken in to help or destroy another ; and that each must stand or fall by itself. This has no relation to the point now under consideration The court were not considering whether the plaintiff's admission of a fact in either plea could be received in that, or in any other cause, as evidence to prove that fact before a jury ; but were merely stating, what no one would controvert, that every plea in bar ought to be sufficient and complete in itself. The same rule is laid down in the case of *Currie & al.* v. *Hen*

*ry*, 2 Johns. Rep. 433 ; *Sevey* v. *Blacklin & al.* 2 Mass. Rep. 543. If a defendant in trespass, having a good justification, should divide the matter of it into two pleas, and plead half of the facts in one plea and half in the other, it would not be imagined that he had made out a good defence ; and this is all that is decided in the three cases last cited. So the case of *Lapworth* v. *Wast*, Cro. Jac. 86, came before the court on a motion in arrest of judgment on account of the *venire facias* being mis-awarded. The defendant had pleaded the general issue to part, and a justification to the residue of the trespass ; and the *venire* would have been right, if the court could have taken the defendant's admission or averment in the second plea to help the first. But it was held that the two pleas were entirely distinct, " like several pleas to several actions." Now if the defendant had admitted or averred in one action, that the vill of Eythorp was within the parish of Wapenbury (which was the important point in that case) no one would suppose that this would authorize the awarding of the *venire* from the vicinage of Wapenbury in another action where the vill only was named, and where nothing had been said of the parish. It is not necessary to inquire whether this point would be so decided at the present day, because it has no bearing on the question before us. The court put it expressly on the ground that the pleas were to be considered as if made in two different actions ; and if that position is correct, the inference from it was probably well founded. But in all cases of double pleading, under the statute of *Anne*, the several pleas are, in form as well as in fact, different pleas to the same action. In all this class of cases the question is, what the court can judicially infer, or are bound to infer, from the record before them, and what judgment they ought to render on the facts so ascertained. In the case at bar the question is, whether certain admissions or averments of one party may be used in evidence against him by the other party, on the trial before the jury.

If then there is no express decision of the point in question, as applicable to the action of slander, we are next to inquire whether it has been established by a long and uniform course of practice. And here it must be admitted that the declara-

tion of Chief Justice *Mansfield* is, to say the least of it, very strong evidence of the fact. It may be considered as proving conclusively that there had never been an instance, within his knowledge, of the defendant's language in one plea being used to disprove another plea. But we are not satisfied that this fact will warrant the inference, that such evidence cannot under any circumstances be admitted. The assertion may be considered as proving one of two things ; either that it had been settled by the English courts as an invariable rule, that the plaintiff should never be permitted to give in evidence the defendant's admissions in one plea, on the trial of another ; or that plaintiffs had not in fact resorted to this kind of evidence, either because it did not happen that they needed it, or because the admissions were of such a kind, that when taken all together they would not maintain the action. It is not suggested that any such rule had been settled by the courts ; and on the contrary the assertion is founded solely on the common practice.

This practice we apprehend may be satisfactorily accounted for on the two grounds last suggested. Two things must concur before the plaintiff in an action of slander would find it necessary, or even expedient, to resort to this kind of evidence. First, the defendant must have pleaded the truth in justification of the words spoken ; and secondly, the plaintiff must, from some accident, unexpectedly find himself unable to prove in the usual manner the speaking of the words. It is hardly credible that any plaintiff who could prove that fact by witnesses, would prefer to read in evidence such a confession of the defendant. It may however be sufficient to say on this point, that there is no series of cases, and we apprehend no single case, in which this question has occured in the action of slander. If therefore the practice had been as universal as it is supposed to be in the opinion so often referred to, yet if a new case occurs to which the supposed rule had never been actually applied, and in that case it should be found to lie absurd in its application, or unjust in its operation, this new case ought to be an exception from the rule.

The foregoing remarks as to the course of practice have been confined to the action of slander ; and we apprehend that

In every other action the pleadings, when properly conducted, will be found to fall within the second description before mentioned, that is, that the admissions contained in them are of such a kind that the plaintiff could not avail himself of them, because they would not maintain his action upon the general issue. If this is true, it would sufficiently account for the practice of never using one plea to disprove another, without supposing that it arose from any positive rule that precluded such evidence ; and, on the other hand, this uniform practice, in such a number and variety of cases, may account for the opinion, that there is a rule to this effect applicable to all cases whatsoever.

It would be tedious and unnecessary to go through all the instances of special pleas that are usually pleaded with the general issue, for the purpose of demonstrating that the admissions contained in the special pleas are not such as could be successfully used by the plaintiff on the trial of the general issue. It will be readily admitted, that this is true in most cases. We have found only two that would probably be thought by any one to be exceptions ; and those are the plea of payment, to an action of debt on bond for the payment of money, and the plea of set-off to the like action. It may be observed, in the first place, that neither of these special pleas does directly and explicitly admit that the bond declared on is the deed of the defendant, although it is true that such an admission is most strongly implied. But there is another answer, and that is, that neither of these special pleas ought ever to be allowed to be joined with the general issue. The leave to plead double is usually granted almost as of course, and without much consideration ; because it is supposed, that even if it is unnecessary, it will at most produce some little inconvenience to the plaintiff, and cannot materially affect his rights. It is in this way only that we can account for the allowance of either of these pleas, when joined with the general issue. It has been deliberately decided, that in an action of debt on bond the defendant should not plead the general issue to the whole declaration, and a tender as to part of the debt ; *Jenkins v. Edwards*, 5 D & E. 97 ; and it is not easy to see any objection to the plea of tender in such a case, that would not apply

Alderman
*v.*
French

14

Alderman
*v.*
French.

with at least equal force to the plea of payment. It has ac cordingly been decided, repeatedly, that these two pleas could not be joined. *Fox* v. *Chandler*, 2 W. Bl. 905 ; *Arnold* v. *Baas*, ibid. 993 ; *Fox* v. *Meen*, Barnes's Notes (3d ed.), 363. We do not know that these cases have ever been overruled, although in *Chitty* v. *Hume*, 13 East, 255, it seems to be supposed that the court might, in their discretion, allow those pleas ; but they were not allowed in that case.

As to the plea of set-off, it does not in common cases con tain any implication in favor of the plaintiff, but only sets forth the debt due to the defendant, with an offer to set it off against whatever the plaintiff shall prove to be due to him But by the statute 8 *Geo.* 2, *c.* 24, where the debt for which the action is brought accrues by reason of a penalty contained in any bond or specialty, the defendant in his plea of set-off must show " how much is truly and justly due " on the bond or specialty on which the action is brought. The plea under this statute contains the same implication with the pleas of ten der and of payment, and for the same reason ought not to be joined with the general issue. Lord *Mansfield*, in *Collins* v. *Collins*, 2 Burr. 825, says, that since the statutes allowing set-offs, (2 *Geo.* 2 and 8 *Geo.* 2,) the setting off of mutual debts is become equivalent to payment ; and yet the set-off now is ex actly upon the same foot as the actual payment was before the statute. We are not informed whether this plea of set-off has been commonly or frequently allowed to be pleaded together with the general issue. It was so pleaded in the case of *Bell* v. *Shaw*, 1 Holt's Rep. N. P. 293 ; but it does not appear whether any question was made originally as to allowing those two pleas ; and on the trial no evidence appears to have been produced by the plaintiff as to the general issue, but it was considered as admitted, that the defendant did owe on the bond the sum specified in his plea.

On the whole, it appears, from the best examination that we have been able to make, that the precise question in this case has never been decided in any of the adjudged cases to be found in the reports ; and that no principle has been es· tablished, which would necessarily involve and settle the point now in question. It is true, that general rules and propositions

have been laid down in terms broad enough to include the case now before us ; but when they are confined, as they ought to be, to the cases which commonly occur, and which alone must have been in the mind of the court, and when it is shown, that they are strictly true as applied to all the cases that had actually occured in practice, they certainly furnish no authority for a new case, which is materially different, and in which their application would be manifestly absurd and unjust.

But if there is no authority against the opinion which we have adopted, there is much to support it. There is no rule better settled, than that the jury are not to inquire of that which is agreed by the parties, and that they cannot find any thing against that which the parties have affirmed and admitted of record. It is needless to cite the numerous cases to this point, which may be found in Viner, *tit.· Trial, R. f.*, in Bac. Abr. *tit. Verdict, T.* and *W.*, and in other books. This being the established rule of the common law, it must prevail in this case, unless it has been rescinded by the statute of *Anne*, or by some adjudged case or some settled practice under the statute. The statute contains no such provision ; and we find no adjudged case in point, and no such course of practice. There are many cases in which there is an inconsistency, to a greater or less degree, between the two pleas allowed under the statute, but none, in which any question has arisen, where there is a direct and unequivocal contradiction between the pleas ; and perhaps we may add, none that can be considered of any authority, where there is even a clear and unequivocal implication in one plea of what is denied in the other.

If the admission is contained in the same record, it is, as we have said, conclusive ; but if made in any other manner, freely and deliberately, whether by parol, in writing, or in any other record, it may be given in evidence against the party who makes 't. A recital in an indenture executed by the defendant is good evidence against him, although the plaintiff was not a party to the indenture. *Burleigh* v. *Stibbs*, 5 D. & E. 465. So, an answer in chancery by one of the defendants was held to be good evidence against them all, though the plaintiff was not a party to the suit in chancery ; and Lord *Kenyon* observed,

Alderman
*v.*
French.

that he did not receive it as evidence of a judicial proceed ing, but as a naked admission. *Grant* v. *Jackson*, Peake, 203 One circumstance in the case now before us suggests another example like that last cited. The slanderous words uttered by the defendant in this case affected equally the reputation of the woman who is named in the declaration ; and it is understood that she also brought an action against the defendant for speaking the same words. There can be no doubt that the woman might have used the defendant's plea in this case as evidence in her action ; and if the defendant had made the same plea in that action, the present plaintiff might in like manner have used that plea as evidence in this action. It is certainly a most extraordinary rule, that would prevent the jury from seeing or regarding an admission of the defendant contained in the record of the cause they are trying, and would even prohibit the plaintiff from calling their attention to it as evidence, when the plaintiff would be permitted to read in evidence another paper, containing the same admission in the same words, provided he could find that paper in another file of paers, and not in the record of his own action.

On the whole, we are satisfied, that the admissions of the defendant in his special plea in this case were competent and legal evidence for the plaintiff on the trial of the general issue We found this opinion on the reason of the thing, and the general principles of the law as established before the statute of *Anne.* We have found no settled practice ; and no adjudged cases in the English books, showing that the law, as applicable to a case like the present, has been altered since the making of that statute ; and we are not aware of any such practice or adjudicatior *in* this State ; and we are satisfied, that the rejection of the evidence might often lead to consequences absurd and preposterous in themselves, and unjust to the plaintiff in such an action.

The other objections to the verdict, we think, are not tenable. The defendant having in the form of a plea in justification set forth a series of facts which would, if uncontradicted, have maintained an issue upon that plea, was obliged to rely upon the general issue, it having been decided that the special plea was bad, in not averring directly the truth of the words

or alleging distinctly the commission of the offence which was imputed. Under the general issue, the truth cannot be given in evidence in mitigation of damages ; if it could, all the benefit intended to be secured to the plaintiff by the special plea would be lost ; for he would have no notice of an intent to fix upon him the crime, and would not be prepared to defend himself against it. 1 Chitty on Pl. 488 ; *Watson* v. *Christie,* 2 B. & P. 225, note ; *Underwood* v. *Parks,* 2 Str. 1200. Now the evidence which was rejected by the judge was of the facts contained in the special plea, which was overruled because, among other reasons, they amounted to an argumentative assertion that the words spoken were true. To admit those same facts in evidence under the general issue, under the pretence of mitigating the damages by such evidence, would be to give the defendant all the advantage of the rejected plea except the costs of the action ; for if the facts should have been proved as alleged, nominal damages only would have been given, and this because the words spoken were true ; and thus the injury to the plaintiff would have been increased, because the defendant had either mistaken his plea, or had chosen to omit a direct allegation of the truth of the words in order to avoid the effect of a failure to maintain his plea, which is generally to enhance the damages. No doubt under the general issue the defendant may prove, in mitigation of damages, that the words were not spoken maliciously ; but this he cannot do by proving they were true, for the reasons above stated. The same answer may be given to the complaint of the rejection of Curtis's deposition, *that* tending to prove the truth of the words spoken, and not that they were spoken under such circumstances as would show that no wrong was intended.[1]

With respect to the evidence offered to prove that, before the publishing of the words, there was a report current in the neighbourhood that the plaintiff had been guilty of the crime

*Alderman*
*v.*
*French.*

---

[1] *Root* v. *King,* 7 Cowen, 631 ; *Wormouth* v. *Cramer,* 3 Wendell, 395 ; *Shepard* v. *Merrill,* 13 Johns. R. 477 ; *Van Ankin* v. *Westfall,* 14 Johns. R 233 ; *Bodwell* v *Swan,* 3 Pick. 376.

imputed to him by the defendant, *that* was rightly rejected.[1]
*Wolcott* v. *Hall*, 6 Mass. Rep. 518. Although in the case
cited a special justification was pleaded, which made it still
more proper to reject such evidence, yet the reasoning of
the Court is general as to the dangerous nature and evil ten-
dency of such evidence. In 2 Camp. 251, there is a case,
(*Earl of Leicester* v. *Walter*,) which comes very near the
present, but is distinguishable from it. In a trial of an action
for a defamatory libel of the most aggravated nature, the de-
fendant was allowed to prove, that, before and at the time of
the publication of the libel, there was a general suspicion of the
plaintiff's character and habits, that it was generally rumored
that such a charge had been brought against him, and that
his relations and former acquaintance had, on this ground,
ceased to visit him. This is going a great way, but still the
ground of the decision was, that the evidence went to negative
the general good character of the plaintiff, and to disprove his
assertion that he had always ·been free from the suspicion of
such a crime, and thus the defendant would narrow the ground
of damages by showing that a principal source of them, viz.
the contempt of society and the loss of friends, had occurred

---

[1] *Root* v. *King*, 7 Cowen, 613; *Matson* v. *Buck*, 5 Cowen, 499 ; *Bodwell* v.
*Swan*, 3 Pick. 376; *Lewis* v. *Niles*, 1 Root, 346; *Leicester* v. *Smith*, 2 Root,
24 ; *Waithman* v. *Weaver*, 11 Price, 257, note. *Contrà*, *Wyatt* v. *Gore*, 1 Holt's
Cases, 299 , *Cook* v. *Barkley*, 1 Pennington's New Jersey R. 169, one judge
dissenting ; *Skinner* v. *Powers*, 1 Wendell, 451. See also *Earl of Northamp
ton's case*, 12 Coke's R. 134 ; *Mills* v. *Spencer*, 1 Holt's Cases, 534. In *Treat*
v. *Browning*, 4 Connecticut R. 408, it was held, that such reports, though inad-
missible in mitigation of damages, may be admitted as evidence of general
character. So, in *Mapes* v. *Weeks*, 4 Wendell, 569, the court said, that reports
of·this kind were inadmissible in mitigation of damages, " unless under cir-
cumstances, which show an absence of malice, and an admission of the falsity
of the charge." So, the defendant cannot show under the general issue, in
mitigation of damages, that the special facts in which the slander consists were
communicated to him by a third person. *Mills* v. *Spencer*, 1 Holt's Cases,
533; *Treat* v. *Browning*, 4 Connecticut R. 408; *Mapes* v. *Weeks*, 4 Wendell,
659. But see *Kennedy* v. *Gregory*, 1 Binney, 85 ; *Leicester* v. *Smith*, 2 Root
24 , and it has been held that an anonymous letter, received by the defendant,
showing that he was not the inventor of the charge, is admissible. *Morris* v
*Duane*, 1 Binney, 90, note. So, in an action of libel, he may show that he
copied the statement from another newspaper, but not that it had appeared
concurrently in several other newspapers. *Saunders* v. *Mills*, 6 Bingham, 213 ,
S. C. 3 Moore & Payne, 524.

without his agency. And —— v. *Moor*, 1 M. & S. 284, a case which on first appearance is anomalous, may be resolved in the same way. The words complained of imputed unnatural practices to the plaintiff, and, upon the authority of the case above cited from Campbell, Mr. Justice *Grose* allowed the defendant's counsel, on cross examination, to ask one of the plaintiff's witnesses, whether he had not heard reports in the neighbourhood, that the plaintiff had been guilty of *similar practices ;* saying, it was evidence to contradict the plaintiff's allegation that he was of good fame, and that the speaking of the words occasioned the injury to it ; and the whole Court of King's Bench affirmed this doctrine. It seems a little remarkable, however, that a question of that nature should have been regarded as a new one, at so late a period of the British juridical history, and that a *nisi prius* case of recent decision should alone have been relied upon in support of it. If this decision be contrary to the decision of this Court in the case of *Wolcott* v. *Hall,* we should feel inclined, if not bound, to adhere to the latter, especially as Chief Justice *Mansfield* says, "In point of reasoning, he could never answer to his own satisfaction the arguments of the counsel who opposed the admission of the evidence." The modern decisions in England, though much to be respected, have ceased to be authorities ; by *modern* I mean those which have been made since the revolution severed the civil relations of the two countries.

However, it is probable that *reports of similar practices,* which was the evidence admitted, meant something more than a report that the party had been guilty of the particular offence imputed to him, which was the amount of the evidence offered in the case before us, and rejected by the judge.

In the case of *Larned* v. *Buffinton,* it is intimated, that evidence tending to show that the defendant was, by the misconduct of the plaintiff, led into the belief that he was guilty of the offence he had imputed to him, might perhaps be received in mitigation of damages, as well after a failure to prove a justification pleaded, as under the general issue. We do not find this dictum supported by any authority ; and think, whenever such evidence is admitted, it will be when the defendant, instead of making it a ground of defence under the pretence

Alderman
v.
French.

of mitigating the damages, will admit that he was mistaken, and thus afford all the relief he can against the calumny which he has published.

The refusal of the judge at the trial to allow the defendant to withdraw the special plea and file a new plea in justification was a matter within the discretion of the judge, to be determined on by the circumstances of the case. It cannot be the ground of a motion for a new trial.

*Motion for a new trial overruled*