The action was continued nisi, and now the Chief Justice, and the Judges Thatcher and Parker, being present, the following opinion of the Court was delivered by
Parsons, C. J.
This action is on the case for a malicious prosecution, and for defamatory words charging the plaintiff with stealing the defendant’s horses. The defendant pleaded the truth of the words in justification, and issue was joined on a traverse of this plea; and a verdict found for the plaintiff. •
The defendant moves for a new trial, because evidence, proper to mitigate the damages, was rejected by the judge; and [ * 551 ] * because he misdirected the jury on the subject of damages; and on these two grounds exceptions are filed. The defendant, failing in his justification, proposed to prove, in mitigation of the damages, the manner and condition of the plaintiff’s life, and that, previous to the cause of action, his general character for honesty, integrity, and fair dealing, was not good. Evidence of this nature was not admitted by the judge.
On the argument, it was observed by the Court that a general statement of evidence proposed to be given, without producing witnesses to testify agreeably to the statement, was not regular; and the defendant was called upon to state the facts he was ready to prove. He accordingly stated by affidavit, that he at the trial had witnesses to prove “ that the plaintiff left his father, a few years since, before he was of age, and without any property ; that since that time,he had been a roving single man, without any fixed place of residence for any great length of time, and without having any regular business; having lived in Boston, Wilbraham, Springfield, Middleton, Worthington, and Northampton; that he has in some of those places been considered as a drover, in others a butcher ; and in a very circumscribed manner had followed those branches of business; but that the principal part of his time had been employed in buying, selling, and exchanging horses in different parts of this and of the adjacent states; that he was without real estate; and that in the manner of gaining subsistence, and in his grade and standing with society, he was below mediocrity.”
After this statement, the Court, in forming their opinion, have considered evidence of these facts as regularly offered by the defendant, and as rejected by the judge.
*481 As the defendant has not stated that any evidence was offered touching the plaintiff’s moral character, it is not necessary to give an opinion whether such evidence would have been legal. But we are of opinion, that the plaintiff may give in evidence, to aggravate the damages, his own rank and condition of life, and also, that the defendant may avail himself of such evidence, when it will have a legal tendency to mitigate * the damages, [*552 | and that this may be done either on the general issue, or on a traverse of the justification, because the degree of injury the plaintiff may sustain by the defamation may very much depend on his rank and condition in society.
It is a rule of law, that in the prosecution of any cause neither party shall give evidence of any matters which are not in issue, because the other party will have no opportunity of encountering this evidence by opposing testimony.
Consistently with this rule, the plaintiff’s rank and condition in life may be given in evidence, because it is in issue, as the knowledge of it may be necessary to a just assessment of the damages, and because it is a fact, in its nature, of general notoriety. But the rule will not admit evidence of the particular facts in the defendant’s statement, or the plaintiff must be considered as, at all times, prepared to give a history of his places of abode, and of his occupation during a great part of his life, even in his minority, and to have with him his title to real estate, if he has any. Neither does the knowledge of the facts appear useful in the assessment of damages, unless, perhaps, to aggravate them by proving to the jury that the plaintiff was very generally known among his fellow-citizens, and that from this circumstance the injury from the slander would be more extensive.
We are now to consider whether the plaintiff’s rank and condition in life, which the defendant offered in evidence, would have had, in this case, any legal tendency to mitigate the damages.
The allegation that the plaintiff’s manner of gaining subsistence, and that his station and condition in society was below mediocrity, when connected with the other allegations in the defendant’s statement, would, if proved, have satisfied the jury that the plaintiff gained his subsistence by buying, selling, and exchanging horses, in this and the neighboring states, or, in other words, that he was a horse-jockey. Now, from the nature of this action, and from the evidence in the cause, it is not easy to presume that the jury had not evidence of these facts. It was the interest of the plaintiff that they should have this evidence, as its tendency in this case would have been rather to aggravate the damages. A man *482 [ * 553 ] *vvith the reputation of a horse-stealer is ruined osa dealer in horses. With this character hanging on him, no man would trust him to try a horse; and no man would buy a horse of him, through fear he should buy a stolen one. We are, therefore, of opinion that this evidence, if given by the defendant, would have no legal tendency to mitigate the damages, and consequently he is not injured by its rejection.
The defendant has also excepted against the direction of the judge, because he charged the jury, that, considering the circumstances which had been proved, the manner of speaking the words, und especially the justification by the defendant on record, no evidence'whatever could be considered in mitigation of damages.
We are satisfied that evidence of certain facts and circumstances may be received under the general issue, which ought to be rejected under this justification. In the former case, the defendant may prove that the words were spoken through heat or passion, and not from malice; or that they were spoken with an honest intention, through mistake, and not with a design to injure the plaintiff. But if the defendant, when called upon to answer in a court of law, will deliberately declare in his plea that the words are true, he precludes himself from any attempt to mitigate the damages by any of those facts or circumstances, because his plea of justification is inconsistent with them (5).
But we are not prepared to declare that there are no facts or circumstances, from which the jury may mitigate the damages under a special justification of the truth of the words, in which he shall fail. When, through the fault of the plaintiff, the defendant, as v/ell at the time of speaking the words, as when he pleaded his justification, had good cause to believe they were true, it appears reasonable that the jury should take into consideration this misconduct of the plaintiff to mitigate the damages. The direction of the judge excepted against is predicated not only on the plea of justification, but also on the circumstances which had been proved in the case. He has, therefore, at the request of the [ * 554 ] * Court, furnished us with a report of the evidence in the cause.
From this report it substantially appears that the plaintiff had several horses at the defendant’s stable in Worthington at livery; that all the horses were the property of the plaintiff, except a black horse, which was the joint property of the parties; that the plaintiff wanted the black horse to match another horse of his own, ana that the defendant wanted him for the same purpose; that the *483 plaintiff pri *ised finesse in removing the horses from the defendant’s stable, and in fact removed them, without the defendant’s knowledge, to Mills’s stable, distant about half a mile; that the next day the defendant knew they were at Mills’s, and was there with the plaintiff attempting to adjust the controversy, and offered the plaintiff to arbitrate it, which he refused; that about two days after, the plaintiff took all his horses, and went on with them to the east ward; that the defendant followed him, and might have arrested him at Northampton, but declined it, because he might attach more property when the plaintiff had gone further on; that the defendant arrested him at Belchertown, on a writ which he did not prosecute ; that about the time of the arrest, and also after the plaintiff was in custody, he repeatedly uttered the defamatory words; that about the same time he told a witness that the horses were not his, except half the black horse, but that it was best to use policy.
From considering the report of the evidence, we are satisfied that the judge’s direction, predicated on this evidence, was right. It does not appear that the defendant ever supposed that the defamatory words were true. He knew that all the horses were the plaintiff’s, except the black horse, and of him that the plaintiff was part owner; this he declared, but said it was necessary to use policy. Indeed the inference is, that he knew that the words were not true; for at Mills’s he did not charge the plaintiff with theft, but attempted to settle the dispute, and offered to arbitrate it. Afterwards, when he has had time for reconsideration, and to obtain the information of counsel as to the law as applied to the fact, he comes into court, and publicly puts the slander on record.
* It is our opinion that a new trial be not granted, and [ * 555 ] that judgment be rendered according to the verdict, with the additional damages and costs, as consented to by the defendant, in his agreement on file.
After the opinion of the Court had been thus delivered, the Chief Justice observed that there had been no opportunity of consulting with Judge Sedgwick, but that the opinion had been laid before Judge Sewall, who fully concurred in it.

 [Jackson vs. Stetson & Al. 15 Mass. 48.—Alderman vs. French, 1 Pick. 1.—Sedvide, cases in the notes to Jackson vs. Stetson, ub. sup.—Ed.]