Mr. Justice Cheves
dissented, as follows :
In this case I differ from the majority of the Court.
The question is simply, shall the defendant, under the plea of not guilty, be permitted to give the general character of the plaintiff in evidence ? The prominent arguments, in support of the affirmative of this question, are:
1. That the pleadings put the character of the plaintiff in issue.
2. That the foundation of damages is the actual injury suffered by the plaintiff in his character, and that where he had no character to lose, he can have sustained no injury.
3. That as the plaintiff may give in evidence his rank and condition in life in aggravation, the defendant may do the same in mitigation.
It is believed that all the arguments in the affirmative of this question may be brought under one or other of these three heads; which we will now consider:
1. It is alleged that the pleadings put the character of the plaintiff in issue ; now it is not true, in point of law, that the character of the plaintiff is put in issue. Mr. Starkie, in his Treatise on Slander, collecting the sense of the authorities on this subject, says : “ It has been in all times the fashion to preface the legal enunciation of the plaintiff’s case with a preliminary panegyric upon his character; this is superfluous, since it does not affect the gist and essence of the action. A man of bad character is not to be represented as worse than he really is, and therefore is entitled to a compensation, to be measured by the excess of the scandal beyond what is due to him.”' Starkie on Slander, p. 299. “In one instance, indeed,” says this author, “it appears that the plaintiff’s announcing himself to be of good fame tempted the defendant to plead that *at the time of publishing the words, the plaintiff was not of good fame; but the plea was holden to be bad, since it answered matter of inducement which did not require any answer,” (Ibid. p. 299.) Mr. Justice Buller, in Janson v. Stewart, 1 T. Rep. 748, says : “ It is not true that the general character of the plaintiff is put in issue and a better pleader than be never sat on the English bench ; vide also 1 Chitty on Plead. 226, 364.
2d. But it is said that the foundation of the damages given in actions of slander is the actual injury suffered by the plaintiff in his character. This is not true. It is upon the presumption of loss, (little more than a legal fiction,) and not upon the actual loss, that actions of slander are principally founded; and the experience of the profession abundantly attests the fact, that the heaviest damages are often given where the slightest injury is sustained. Are not the heaviest damages given when the slander is uttered against unsullied and impregnable character; where the malice of the calumniator has been shot, “ like a pointless arrow from *165 a broken bow ?” To tbe tottering and questionable character, the shafts of the slanderer are fatal and ruinous In this case, the damage is above compensation. Not only the wreck of reputation is swept away, but hope itself, which sustains us when “ we are ready to perish,” is not allowed to cheer the sufferer. In such cases, we know that the damages are usually nominal, though the injury is immeasurable and intolerable. Is it not, then, amusing ourselves with a phantom, when we suppose that the actual loss sustained by the sufferer is the real foundation of damages in actions of slander. There must be other and higher principles on which they are founded. Is it not obvious that the foundation of these damages is to be discovered in the general sanctity of character, which is considered as a shield, not against irreparable injury only, but against every possible assault upon the hallowed blessing of a good name; even the wicked and the worthless are allowed this protection ; *as the infidel was once permitted to enter the Christian sanctuary. To take any other view of the subject, it seems to me, is to substitute the narrow fictions of techical learning, which are very proper in their place, for the great policy of the law. It is true that this view of the subject has its limits. The guilty are not put on a footing of equality with the innocent. Incentives to virtuous conduct would otherwise be wanting. We are permitted to abhor, and proclaim our abhorrence, of known and specific guilt. If what we utter be true, we are permitted to justify it. But because A. has been guilty of veniable acts of immorality, we are not permitted falsely and maliciously to accuse him of the crime of theft or murder, and to excuse ourselves under the evidence that he is a man of general bad character, and therefore has suffered less than a man of pure and unimpeachable character would have done. For the question is, shall the false and malicious slanderer protect himself under the bad character of the person whom he has injured ? The established and unquestioned rules of evidence have provided amply, without this rule, for the defence of all, but the false and malicious slanderer. Thus the defendant is permitted :
1st. To justify and prove the truth of what he has said.
2d. If he has heard the slander from a third person, and, when he has repeated it, has mentioned his authority, he is excused.
3d. He is at liberty to give in evidence, in mitigation of damages, any reports or suspicions which may have been in circulation concerning the plaintiff, whether true or false; and all other facts and circumstances which have any relation to the specific slander, and which are calculated to show that he uttered the words charged innocently.
He is only not permitted to say before a tribunal of justice,[1] “I did utter the slanderous words charged ; they are not true; I never heard it suggested by human tongue that the plaintiff was guilty of the crime they express ; the charge arose in the wantonness of *my imagination, and was uttered in the maliciousness of my heart; but I am not liable to damages, orto considerable damages ; because the plaintiff is not a man of general good character.” Is such a defendant entitled to any mitigation of damages ? Ought he not to be subjected to heavier penalties for thus oppressing the fallen, perhaps the broken *166 hearted and repentant and reforming offender, than if he had, with equal malice, but with less meanness, attacked the highest and most irreproachable man in the community ? I should say he ought. But if the admissibility of this evidence were clear, according to analogy and theory, it ought to be rejected in practice from its immateriality to a fair defence, and from the abuses of which it will be susceptible. It is immaterial, because as far as such a cause should operate, it has its full influence, and too much, through the knowledge of the jury, who try the cause, who will know the character of the plaintiff as well, generally, as the witnesses who may be called to depose to it, and who (happily) are much more impartially selected. Of the character of the plaintiff, in a case like this, a jury can rarely be ignorant. The common evil is, that they know the parties too well. The ease is not analogous to the case of witnesses, who are frequently drawn from a distance, while suitors are, generally, residents of the place where the trial is had. It is susceptible of the greatest abuses. The person, not of unblemished reputation, must suffer every calumny that the tongue can utter’, in silence ; for if he seek redress against any specific slander, he must suffer the defects of his character to ire exhibited and proclaimed in a court of justice, by as many witnesses as the fears or malice of the defendant may choose to call. A man laboring under a neighborhood calumny, though perfectly innocent, must be the victim of every specific slander that maybe uttered against him. He dare not enter the portals of a court of justice, or he will be doomed to eternal infamy by a thousand tongues. It furnishes the very means by which the most frequent, and often the most malicious slanders, are circulated.* By the uttering of general accusations, opinions, and suspicions, and naming no particular accusation, all responsibility is avoided. It is, practically, the very worst test of good character. We see, daily, in the investigation of the character of witnesses, an equal number of persons called up on each side, one half swearing that a particular witness is worthy of belief, and the other half declaring with equal confidence that he is not. And I appeal to the experience of those who have witnessed these examinations, whether it does not often happen that honest men and men of truth are rendered infamous, and men without character and without truth established in reputation, as far as such testimony can produce such effects ? I may fairly enumerate among the evils of which such testimony will be. susceptible, (unless some great good were to be gained by it,) the great loss of time in the examination of many witnesses, and the ruinous expenses to suitors. I have considered this question on principle, and not by reference to authorities, because the authorities by which we are bound, and those to which we usually resort, do not touch it. The only case in the books that I have been able to discover which supports the admissibility of this evidence is Wolcott v. Hall, 6 Mass. Rep., and the point is not there decided, though it is stated to be the law in the opinion of the Court. The case of Larnéd v. Buffinton, 3 Mass. Rep. 546, does not, as I conceive, touch the point; it only determines that the rank and condition of the plaintiff may be given in evidence, in mitigation of damages ; a point which we will consider hereafter. In the case of Foote v. Tracey, 1 John Rep. 46, the Court was divided. The English cases certainly do not establish the admissibility of the plaintiff’s general char *167 acter. They go no farther than to admit particular facts and circumstances, in relation to the specific slander, short of justification; even this indulgence has been established by no solemn decision; but the uniform practice at Nisi Prius has established the law to that extent. The wisdom of going even so far has been seriously doubted by very *high authority in the English Courts. In the case of the Earl of Leicester v. Walter, 2 Campbell’s Rep. 251, the defendant offered to prove that it had been suspected and rumored that the plaintiff had been guilty of the offence alleged in the slanderous words. Best objected to the evidence, and said that “if this was the law in slander, no plaintiff ought to come into Court, since a malicious and artful defendant might invariably ruin his character, by shaping the defence a little short of a justification. ” And Sir James Mansfield, Chief Justice, said, “In point of reasoning, I could never answer, to my own satisfaction, the arguments urged by my brother Best.” How much more strongly do those arguments forbid the reception of the testimony proposed in this case ? There is an old Nisi Prius case, Dennis v. Pawling, 12 Viner, 159, in which it is said, the Judge (Baron Price) would notallow “anyparticular credit to be given of the plaintiff, but if the defendant had a mind to examine to this, the question must be asked in general.” It is not very clear what is meant by these words. If they mean that the plaintiff’s character can be given in evidence, they have never been recognized in any subsequent case, though that case is upwards of one hundred years old.
Gunning, for the motion; Glarlce, Solicitor, contra.
3. The last general ground on which it is supposed this evidence ought to be received, is, that as the plaintiff is permitted to give in evidence his rank and condition in life in aggravation of damages, the defendant should be permitted to do the same in mitigation of damages ; this is the point decided in Larned v. Buffinton, 3 Mass. Rep. 546. But I cannot imagine that the rank and condition in life of a man involves his bad or good character in a moral point of view. These terms refer to a high, or low station in life, to riches and poverty, to occupation and profession, and not to moral character. I believe the eminent character for morality of a plaintiff was never given in evidence to enhance damages in an action of this nature; and I think if they offered it, it ought to be rejected as irrelevant. Indeed, this evidence of the rank and condition in life *of the plaintiff, in the sense of the terms which I suppose to be their true meaning, is very uncongenial with our political institutions. Rank and condition in life merely, should, perhaps, neither increase or diminish the damages in an action of slander under this government. On the whole, I am clearly and decidedly of opinion that the evidence is inadmissible, and that a new trial ought not to be granted.
Mr. Justice Gantt concurred with Mr. Justice Cheves.

 2 yol. 515.