Brockenbrough, J.
This case was an action of slander, for words charging that the plaintiff had sworn to a lie in a certain judicial proceeding, to which action the defendant, pleaded not guilty, and a special plea of justification. After proof had been given by the plaintiff in support of the declaration, and for the purpose of proving that the defendant had uttered the specific slander stated in the declaration, the defendant offered evidence to shew that the general character of the plaintiff was bad as to telling truth on oath, and that he was generally reputed by his neighbours,'and those who knew him, as a person not to be relied on when on oath. This evidence was offered by him, not to support either of his pleas, but in mitigation of damages. The judge of the circuit court rejected the evidence as inadmissible.
It is certain that this judgment derives ample support from the decision of Jones v. Stevens in the court of ex *544 chequer, in which all of the barons, with great deliberation, adjudged that such evidence was improper. 11 Price 235, 5 Eng. Exch. Rep. 62. In that case the barons overruled the practice of the nisi prius courts, as evidenced by Earl of Leicester v. Walter, 2 Camp. 251. and other cases, and the opinion of the king’s bench in -- v. Moor, 1 Mau. & Selw. 284. I believe the practice of our circuit courts generally has been to admit the evidence in mitigation of damages; and notwithstanding the above mentioned strong opinion, I think it a correct course.
The main objection to the evidence is, that it is not within the issue made up between the parties. The defendant in the first place denies that he has uttered the slanderous words alleged; and secondly, admitting that he has uttered them, he justifies them as being true. The primary duty of the jury is to decide on these issues; they are to decide, first, whether the defendant is guilty or not guilty of speaking the slanderous words, and if they believe him guilty, they are next to consider whether he has proved that the specific words spoken are true or not. If they find that the defendant has not supported his plea of justification, then they must find for the plaintiff on both issues. But their duty does' not end there; they have yet something to do beyond the issues. They are still bound to assess the damages; they are to determine what injury the plaintiff has sustained, and to what extent the defendant should suffer in his purse for his transgression; and by their view of these two circumstances, they are to assess the damages which the plaintiff ought to recover. It is with a view to enable them to form a correct judgment in the performance of the latter part of their duty, that it is proper to allow evidence in mitigation of damages, although such evidence does not support or apply to either issue. Thus, evidence may be offered by the defendant to shew that his property is *545 small, and that ho has a wife and children to maintain. This is not within the issues; yet if it be not given, all of his substance may be swept from beneath him, and the jury may ruin him, although they only intended to punish him for his fault. So he may give in evidence that the general character of the plaintiff is bad, touching the charge brought against him, although it does not support his plea; because it cannot bo pretended or maintained by any one, that “ a person of disparaged fame is entitled to the same measure of damages with one vdiose character is unblemished.” 2 Starkie’s Ev. 369.
It is no answer to this position, to say that a plaintiff comes into court only prepared to repel a specific charge against his character, and not to meet an attack upon his general character. The objection would be a good one against any specific charges other than those plainly set forth in the pleadings ; but surely when a man sues for his character, he ought always to be prepared to prove that he has a good general character; and in a public trial of the kind no worthy plaintiff has ever found any difficulty in obtaining testimony to repel such an attack upon him.
Again, wc know that whether such evidence be given in mitigation or not, the jury must necessarily exercise a discretion- in assessing the damages, in proportion to the character of the plaintiff, and the fault of the defendant. If witnesses are not allowed to inform them of the plaintiff’s character, they will undertake to judge of it from their own knowledge. And this is consistent with the common law theory of the jury trial; for why is tiro ancient trial by a jury of the vicinage preferable to all others ? Why, but because the jury is supposed to be conusant of the character of those who como before them ? If then the jury will, in the assessment of damages, judge of the general character of the plaintiff) it is better that they should have some evidence touching that character, so as to have some guide to their dis *546 cretion, rather than he left altogether to their own private knowledge of it.
I am glad to find that the decisions of the highest courts in many of our sister states sanction the opinion we have formed on this subject. I am for reversing the judgment.
Parker, J. concurred.
Cabell, J.
I am of opinion that the evidence of the general character of the plaintiff, in relation to the charge stated in the declaration to have been made against him by the defendant, ought■ to have been admitted in mitigation of damages.
It is objected that the general character is notin issue, either on the plea of not guilty or of justification. It is true that it is not directly in issue; for, if it were, proof of bad character would prevent the plaintiff from recovering any thing. But this admission is not conclusive of the question in controversy. The duties of the jury do not always end in finding the issue between the parties. If they find the issue for the plaintiff in an action of slander, they have then to go on and assess his damages; and the amount of these damages may depend on a variety of considerations. One of these considerations is the previous general character of the plaintiff; for it would be manifestly unjust to extend to a man whose previous bad character had already excluded him from society, the same compensation that is allowed to one who had enjoyed all the advantages of an unblemished reputation, until he was deprived of them by the foul slander of the defendant.
Moreover, evidence of the plaintiff’s bad character, besides shewing that he has received only a slight injury from the charge imputed to him, may in many cases go far to shew that the defendant was uninfluenced by malice; and we know that the damages assessed *547 against the defendant may depend much on the malice with which the charge was made.
1 think the judgment should be reversed.
Tucker, P.
This is an action of slander, for falsely charging the plaintiff" with perjury. The pleas wore, not guilty and justification ; and on the trial, evidence in mitigation of damages was offered of the general had character of the plaintiff' for veracity when on oath. The evidence was rejected, and the defendant excepted; and the question presented by this record is whether such evidence be or he not proper.
I shall first consider the question as if there had been no other pica than not guilty; and in that view of the case, I. think I may safely affirm that this is the first decision which has ever been known in Virginia, in which evidence of general bad character in reference to the matter of offence charged, has been held inadmissible. In a practice of twenty-two years in a district of country where actions of slander were of daily occurrence, I never heard the question raised, nor the objection made. Never having been upon the bench of the common law courts, I have no experience as a judge on that subject; but I think I may safely appeal to my brethren, who have long administered with great ability the justice of the country in the common law courts, to say whether the uniform practice has not been to admit such evidence. I am satisfied it has been the rule, not only ab urbe condita, but in our anterevolutionary tribunals also. We can scarcely doubt it, as they are the fountains from whence we draw our practico, where there has been no express adjudication overruling them. Whence they drew their practice, whether from the case of Dennis v. Pawling, hereafter cited, or from Buller’s Nisi Prius, which was first prinled about the year 1771,1 am unable to say. Certain it is that it was not a very strained interpretation of justice Butter’s work *548 (pages 295. 296.) to suppose that he considered the evidence proper, and that it was so because the general character of the plaintiff is put in issue in every declaration in slander. Without conceding this particular foundation of the principle, it is sufficient here to reiterate the remark that the practice is believed to have been uniform in this state from the earliest time. It would seem, too, to have been so in some of our sister states. It is alleged to have been the practice in New York, 2 Cowen 813. And from the cases hereafter cited from the Massachusetts, South Carolina and Pennsylvania reports, I should infer that the same practice had prevailed in those states. In England it has been confessedly the universal practice at nisi prius. More than 100 years ago, in the case of Dennis v. Pawling, Vin. Abr. title Evidence, I. b. pl. 16. baron Price decided that the defendant should not give in evidence “ any particular credit” as to the plaintiff, but said, if the defendant had a mind to examine to this, the question must be asked in general. The nisi prius cases to the like effect are sufficiently numerous to shew the general practice and understanding of the judges. It is here only necessary to mention Earl of Leicester v. Walter, 2 Camp. 251. decided by chief justice Mansfield; Rodriguez v. Tadmire, 2 Esp. N, P. C. 720. by lord Kenyon; Waithman v. Weaver, 1 Dowl. & Ry. 10. by chief justice Abbott; and Mills v. Spencer, Holt’s Cas. 534. where Gibbs, C. J. is reported to have observed, that general reports have been admitted in mitigation of damages, but not specific facts. 4 Starkie’s Evid. 878. in note. The practice also is admitted in Jones v. Stevens, 11 Price 235.
But it seems the judicial mind has lately been illuminated by a decision in the court of exchequer, in the case of Jones v. Stevens, before cited. In that case the unanimous decision of the whole court was against the admissibility of the evidence; and so zealous and ex *549 cited were the venerable bench upon the occasion, that the singular spectacle was exhibited in a british court of justice, of a public encomium passed by the judges upon one of their brethren. “ The lord chief baron rose from his seat, and addressing mr. baron Wood, congratulated the venerable judge on the .unimpaired vigour of intellect and unabated learning which he had evinced this day in discharge of his high duties. His lordship then expressed the thanks of himself and his brothers to the learned baron, for the very effective and decisive part that he had taken in the determination of this important question.” Whether the strong state of feeling thus manifested is calculated to add to our convictions of the, value of the decision, or to detract from its weight and authority, I shall not undertake to decide. But I shall proceed to examine whether it is not contradicted by the opinions of the ablest judges of England, by the opinions of the king’s bench itself, and by the ablest judges of the courts of the various states of this confederacy.
First, as to the english judges. In Earl of Leicester v. Walter, 2 Camp. 254. Mansfield, C. J. says, “ The plaintiff’s declaration says he had always preserved a good character. The question for the jury is whether the plaintiff suffered this gravamen or not. Evidence to prove that his character was in as bad a situation before as after the libel, must be admitted.” Best moved for a new trial on other grounds, but did not complain of this as a misdirection. In Rodriguez v. Tadmire, which was an action for a malicious prosecution, lord Kenyon said the question might be put in a general way, “ whether the plaintiff was not a man of bad character and this is a stronger case than slander, because the bad character of the plaintiff could not have been introduced against him on the prosecution. In 1 Dowl. & Ry. N. P. Cas. 10. lord chief justice Abbott acquiesced in the case of Earl of Leicester v. Walter, and admitted *550 that it was proper “ to allow evidence of rumours, to shew that the plaintiff, having previously lost his characier, had sustained no injury.” And in Holt’s Cas. before cited, Gibbs, C. J. observes that general reports have been admitted in mitigation of damages, but not evidence of specific facts. In Snowden v. Smith, cited in note 1 Mau. & Selw. 286. Chambre, J. did not deny the case of Earl of Leicester v. Walter, but considered it inapplicable in a case where the defendant justified. Then comes —— v. Moor, before the king’s bench, 1 Mau. & Selw. 284. where Ellenborough, Grose and Bayley all concurred in recognizing the case of Earl of Leicester v. Walter, and expressed the opinion that reports in the neighbourhood, of the plaintiff’s bad character in reference to the subject matter of the charge, were proper evidence in mitigation of damages. It is in that case that lord Ellenborough says, that “ certainly a person of disparaged fame is not entitled to the same measure of damages with one whose character is unblemished, and it is competent to shew that by evidence.” This case however, the court of exchequer, a jurisdiction to whose judgments a writ of error lies from a court composed of the king’s bench and common pleas, — overruled, on the ground that the case went off upon another ground j baron Wood, however, at the same time declaring that he never would accede to the doctrine until it was ruled by parliament. For our parts, as the decisions of those courts are not binding on us, and weigh only from the influence justly due to great and able men, it cannot be material whether the opinion be upon the very point on which a cause turns, or not, provided we are satisfied it is deliberate and well reflected. This we have no reason to doubt in the cases cited; and I confess, if I must follow the decision in Maulé & Selwyn or that in Price, I should be little inclined to the latter, which is not sustained, I think, by any sound reasoning, as it certainly is not by authority.
*551 In our sister states, the admissibility of the testimony on the general issue is very generally conceded. In 1 Nott & M’Cord 268, and 2 Id. 511. two very sound opinions are delivered, which present very satisfactory reasons for the doctrine. In Kentucky a like decision is reported, 2 Marshall 372. In Bodwell v. Swan, 3 Pick. 376. the same principle is avowed; and so in Larned v. Buffington, 3 Mass. Rep. 546. and Wolcott v. Hall, 6 Id. 514. In New York, in the case of Foot v. Tracy, 1 Johns. Rep. 45. the court was divided, chancellor Kent being in favour of the admissibility of the testimony, which opinion he sustained with his usual ability. Spencer did not sit in that case, for particular reasons, but subsequently declared his opinion to be with Kent, at that time chief justice (Anthon’s Rep. 185.) and this opinion has become settled law by the case of Paddock v. Salisbury, 2 Cowen 811. in which, as I understand, Sutherland, justice, delivered the opinion of the whole court.
With this array of authority, I am not disposed to alter the practice which has prevailed without interruption for such a length of years; and the rather, because I think the contrary doctrine pregnant with mischief. In the first place it is calculated to encourage actions of slander on the part of persons of bad fame, who will bo the more ready to sue and take their chance for a recovery they do not merit, when they find the panoply of the law thrown over their vices, and their deformities concealed behind its impenetrable veil. Secondly, I. agree with lord Ellenborough, that a man of disparaged reputation is not entitled to the same measure of damages with one whose character is unblemished; and with Parker, C. J. that to a reputation already soiled, the injury is small; and with Parsons, C. J. that if a man’s character be bad, the jury should consider it, and he ought not to obtain large damages if his character is of little or no estimation in society. Thirdly, I *552 am of opinion that though general character is not strictly in issue on the plea'of not guilty in slander, yet general character not only ought but it does enter into the estimate of every jury; and if their verdict ought to be, and in point of fact is, measured by it, the evidence is precisely that which is essential to enable them properly to admeasure the damages. “The jury,” says chief justice Kent, “ must inevitably have a very large discretion in apportioning the damages to the character of the plaintiff and thaj must have evidence touching that character, so as to have some guide to their discretion. To leave them to act upon their own knowledge only, is“not only to violate the act which requires their examination where they know any thing that bears upon the matter in dispute, but it is to refuse equal justice to all, since the jury in one case may know the worthlessness of the plaintiff and estimate him accordingly, while in another case they may be altogether ignorant of his demerit.”
It has been objected in some cases that the general character is not in issue, and so this evidence is not within the issue, and should be excluded. Even if we admit the premises, which conflict with the opinions of many learned judges, the conclusion does not follow. "When the jury have made up their minds upon the issue, they next proceed to estimate the damages, and then they stand in need of evidence as to general character. Like the case of trover for a horse or slave, the price is not in issue, nor can it be put in issue,* for it is not traversable; yet evidence of value is proper evidence, though not within the issue. The same reason applies in the action of slander, as it is obvious to all that the amount of the damages must depend upon the character of the party.
It remains only to say a word as to the plea of justification. In some cases it has been decided that when the plaintiff pleads justification as well as not guilty, he *553 cannot give evidence in mitigation. If this be the rule in England (which is doubtful, — see 4 Starkie’s Evid. 369. note s. Roscoe on Evid. 38.) I imagine it is because though the defendant may plead double, he cannot there plead inconsistent pleas. 1 Chitty’s Plead. 593. Thus a defendant cannot plead non est factum and. payment. So in slander, the defendant having justified upon the record, the courts in England hold him strictly to the defence of not guilty, the evidence in mitigation implying that the defendant cannot prove his justification, and therefore being inconsistent with that plea. But with us, inconsistent pleas are allowable, and in trying one the court cannot look to the existence of the other; for if it did, they would neutralize each other. Hence we look upon each branch of the pleading as totally separate and distinct from every other, and the defences under one cannot be straitened or curtailed by the existence of the other. Were it otherwise, the liberty of pleading several and even contradictory pleas would bo defeated, and the defendant would hazard much in pleading justification, if, in the event of failing to support his plea, he could not give evidence in mitigation. The reasoning in the note of mr. Starkie (4 Stark. Evid. 369. note s. quoting Kirkman v. Oxley, cited in Phillips 189.) is even more strongly applicable with us than it is in England.
Upon the whole, therefore, I am of opinion to reverse the judgment, set aside the verdict, and award a new trial, with instructions on such second trial to admit evidence of the general bad character of the plaintiff as to veracity upon oath, if such evidence be again offered.
Brooke, J. concurred. Judgment reversed, and new trial awarded.