## JAUCH ET UX. *v.* JAUCH.

SLANDER.—*Mitigation.*— *Words Spoken in Passion.*—In an action for slander, the defendant may set up, in mitigation of damages, that he spoke the words in a moment of heat and passion, induced by immediately preceding acts of the plaintiff.

SAME.—*Evidence.*—*Mitigation of Damages.*—All the immediate circumstances, under which slanderous words were spoken, may be shown, where it is alleged they were spoken in heat of passion.

SAME.—To mitigate damages in an action of slander, it is not enough that the words were spoken in heat of passion. It must also appear that there was provocation, caused by the person of whom the words were spoken.

From the Vanderburgh Circuit Court.

*P. Maier, C. Denby,* and *D. B. Kumler,* for appellants.

*J. S. Buchanan, H. C. Gooding,* and *C. Buchanan,* for appellee.

BUSKIRK, C. J.—This is an action of slander, brought by appellee against appellants, for words uttered by appellant Mary Jauch, wife of Joseph, of and concering appellee, in German, which are translated thus : " You are a God damned whore."

Appellants filed an answer in two paragraphs; first, a general denial ; second, a plea in mitigation, averring substantially that appellee had wrongful possession of appellants' adopted daughter ; that appellant Mary went to take said child, and while at appellee's house she (Mary) was cruelly assaulted and beaten by appellee with an iron poker, and the slanderous

words (if spoken at all) were spoken while said Mary was in a state of excitement, etc.

Issue, trial by a jury, resulting in a verdict of two hundred dollars in favor of appellee, and, over a motion for a new trial, judgment on the verdict.

The error assigned is overruling the motion for a new trial.

The first error complained of is the exclusion of competent evidence. To comprehend the nature and relevancy of the evidence excluded, we will have to state the substance of the evidence.

The deposition of John Stauch was read. He testified that he heard Minnie call Mary " a God damned whore;" he saw Mary strike Minnie in the breast; saw Minnie have a strip of iron one foot long, the eighth of an inch thick, and three-fourths of an inch wide in her hand, but did not see her strike Mary with it.

Minnie Jauch testified, in substance, that she had raised the girl, and had letters of guardianship for her; that Mary came on Sunday to her house, where the little girl had come that day; that Mary asked for the girl, and witness said she might take her home in the evening; that Mary then struck witness, took the child, went out on the pavement, and there called her, in German, " a d——d bitch;" witness had a piece of iron in her hand, but does not know whether she used it; Mary knocked her on the table.

John Dugan testifies substantially as follows: " Mary Jauch came into the saloon of Minnie Jauch; gave Minnie a shove; then went out, and on the outside said: ' You are a God damned whore;' I saw a piece of poker there; there was much excitement."

Plaintiff then proved the translation into English of the German words laid in the declaration.

Appellants then introduced their witnesses in the following order:

Mrs. Mary Jauch testified, that she went to Minnie's house with a policeman; demanded the girl; Minnie said she could not have her; little girl came and gave witness her hand;

then Minnie struck witness five or six times with a poker, injuring her considerably; two men put her out of doors; she did not utter the words charged; did not strike Minnie.

Julius Knoll testified: "I went with Mary Jauch to get the child; Minnie stood in Mary's way, but she crowded into the dining-room; I did not go in; heard a scuffle; went in; saw Minnie hammering away at Mrs. Mary with a poker."

Theresa Lieberman: "I went there with Mrs. Mary Jauch; Mary said she wanted little girl; Minnie said she couldn't get her; Mary struck nobody; Minnie struck Aunt Mary on the head with a poker five or six times; Aunt said nothing on the pavement."

Dr. Schultz described injuries on the head of Mrs. Jauch.

Hirschberger: Was there with Dugan; he swears that he went out of the bar-room after Dugan went out; did not hear Mrs. Jauch call any name.

The appellants offered to prove by the said Hirschberger that he was present in the dining-room, and saw Minnie attack the defendant Mary with a poker, and that Minnie made the first attack, and struck the defendant Mary several times with a poker; but the court refused to permit witness to testify to anything that took place in the dining room. The defendants excepted to this ruling. The defendants rested.

In rebuttal, the appellee introduced one Eilenstein, who testified, in substance, that Mary Jauch slapped Minnie on the breast, and that she called her a dirty sow.

Counsel for appellants, after reviewing the evidence offered by plaintiff, make the following argument in favor of the competency and importance of the evidence excluded.

"For the defendants below, Julius Knoll and Theresa Lieberman, had seen the blows; but Knoll was a policeman, and Theresa a niece of the appellants. Their testimony was to be weighed by the jury. In order to corroborate them and Mrs. Mary Jauch, appellants offered to prove by a disinterested eyewitness the facts as they occurred. There is no discretion in the court to exclude evidence on a material point, at least until

three witnesses have given their testimony touching it. Mrs. Mary Jauch cannot stand here in the attitude of a witness simply, because she is a party. She had the undoubted right to introduce and examine three witnesses in her defence; and the court, admitting the materiality, excludes the witness simply on the ground that 'it had all been testified about.' It is impossible not to see that great injustice was done the appellants, as well by the exclusion of the evidence offered as by the manner in which it was done. The court fairly instructed the jury as to the effect of mitigating circumstances. The charge shows how material it was to prove these circumstances."

Counsel for appellee argue as follows, in reference to the exclusion of the testimony of Hirschberger:

"There is no doubt but that the court has the right to arrest the examination of witnesses, if unnecessary time is being taken, or the evidence offered is immaterial or incompetent. *Rosser* v. *McColly,* 9 Ind. 587. It is not only the right, but the duty of the court to do this. But this discretionary power of the court must be so exercised that no injustice will result therefrom.

"This was an action for slander, and not for an assault and battery. The evidence of the witness Hirschberger, sought to be introduced, was all in reference to a fight and quarrel between the parties, and could have been competent only to mitigate the damages, but for no other purpose. The court refused to allow him to testify, not because his evidence was not competent to mitigate, but simply because the fact had already been fully testified about, and was not disputed by any witness, or questioned before the jury.

"The instructions of the court to the jury were certainly as full and liberal in favor of appellants as could be desired; and the refusal of the court to allow appellants to continue the examination of Hirschberger as to a fact which had already been fully proven, and which was not even disputed, could not have prejudiced appellants, because the court instructed the jury to take into consideration the quarrel and fight, in mitigation of damages.

" The court excluded this proof, stating that it had all been testified about already, and that the fact that the plaintiff struck defendant first with a poker was only material in this case as showing the anger and excitement of the defendant at the time the words were charged to have been spoken.' "

In *Rosser* v. *McColly,* 9 Ind. 587, it was said: " Where, in the progress of a trial, it becomes obvious that a party, in the examination of his witnesses, or in the argument of his case, is consuming time unnecessarily, and not in the advancement of justice, it is clearly within the discretionary power of the court to interpose and arrest such needless operations. And the exercise of this power will be sustained, unless an abuse of it is affirmatively shown. *Priddy* v. *Dodd,* 4 Ind. 84. Here, the court ordered the plaintiff to close his rebutting testimony. It is not, however, shown that he had other evidence which he desired to produce. The order does not, therefore, appear to have prejudiced his case. It was competent for the plaintiff to have placed on the record the grounds of his objection to the action of the court. And having failed to do so, we must intend the rulings of the court to be correct."

In *Priddy* v. *Dodd, supra,* it was said: " In the consumption of time in examining witnesses and arguing causes to the jury, much must necessarily be left to the discretion of the judge. It is peculiarly within the province of judicial discretion to see that these operations are not needlessly protracted, to the delay and detriment of other business on the docket."

The defendant may set up, in mitigation of damages, that he spoke the words in a moment of heat and passion, induced by the immediately preceding acts of the plaintiff. Townshend Slander & Libel, 626, sec. 414.

*McClintock* v. *Crick,* 4 Iowa, 453, the following language was used:

" If, however, the words were spoken through heat of passion, or under excitement, produced by the immediate provocation of plaintiff, such excitement or passion may be shown in mitigation of damages ; ' for evidence that the speaking was impulsive and involuntary, undoubtedly diminishes malice, as

understood by the law.' *Larned* v. *Buffinton,* 3 Mass. 546 ; *Iseley* v. *Lovejoy,* 8 Blackf. 462. And, it may be stated as a general principle, that all the immediate circumstances, under which the words were spoken, are proper to be shown to the jury, as they define the true character of the speaking, which is alleged to be slanderous. See note to *Gilman* v. *Lowell,* 1 Am. L. Cas. 223." See, also, *Brown* v. *Brooks,* 3 Ind. 518 ; *Mousler* v. *Harding,* 33 Ind. 176 ; *Powers* v. *Presgroves,* 38 Miss. 227 ; *Ranger* v. *Goodrich,* 17 Wis. 78 ; *Richardson* v. *Northrup,* 56 Barb. 105.

Hirschberger was the only witness, except the two women, who knew all the facts that occurred in the dining room. Hence, all the immediate circumstances under which the words were spoken were not before the jury. It is not enough that the words were spoken in heat of passion or excitement. It must also appear that there was provocation, caused by the person of whom the words were spoken, which immediately preceded the speaking of the words. A person cannot, without just cause or provocation, work himself or herself into a passion, and while laboring under the excitement produced by such passion utter slanderous words, and then mitigate the damages by proof that the words were uttered in a heat of passion. There was a conflict in the evidence as to which struck the first blow. It was proposed to prove by Hirschberger that the appellee attacked Mary with a poker and struck her several times with it. If this was true, Mary had sufficient cause for passion and excitement, which should have been considered in mitigation ; for the provocation immediately preceded the speaking of the words, and was caused by the acts of the appellee.

We think the court erred in the exclusion of such evidence.

The judgment is reversed, with costs ; and the cause is remanded, with directions for a new trial in accordance with this opinion.

Opinion filed November term, 1874; petition for a rehearing overruled, May term, 1875.