## McCLINTOCK v. CRICK.

In slander, a plea of justification must confess the speaking of the words charged, and set forth such facts as fix upon the plaintiff the specific crime imputed to him by the words charged in the petition.

Where, in an action for slander, for charging the plaintiff with stealing the chickens of defendant, the defendant answered as follows: "And for a further answer, defendant says, that the said plaintiff, either in person or through his children, and with plaintiff's knowledge and consent, did kill, take and carry away, and appropriate to his own use, chickens belonging to defendant;" *Held*, That the answer was bad, as a plea of justification.

Where the slanderous words charged, were spoken through heat of passion, or under excitement produced by the immediate provocation of the plaintiff, such facts may be shown in mitigation of damages, under our practice, without alleging them specifically in the answer.

Where in an action of slander, the defendant pleaded, that the words charged, if spoken by him, were spoken at a time when the plaintiff was speaking and uttering false and scandalous words about defendant, (setting out the words,) and at a time when defendant was angry and in a passion, occa-

McClintock v. Crick.

sioned by the speaking of said false and scandalous words by the plaintiff, which was demurred to, and the demurrer sustained; *Held*, That there was no error in sustaining the demurrer.

Where an action of slander was commenced in October, 1852, and at the return term, the defendant answered, denying the speaking of the words; and where on the 26th of March, 1855, the defendant filed a further answer, to which a demurrer was sustained, and the cause stood at issue, on the answer filed in 1852, until the 13th day of April, 1857, when the defendant filed what is termed "a further and additional answer," in which he claimed a certain sum of money for the value of four dozen chickens, and damages for slanderous words spoken by the plaintiff of the defendant, and also alleged, that the plaintiff's character was so bad, in the community in which he resided, that he sustained no injury from the speaking of the words by defendant, which answer, on motion of the plaintiff, was stricken from the files; *Held*, That under the circumstances of the case, there was no error in striking the answer from the files.

Where notice was given of the taking of a deposition "at the office of *Squire* Moore, in Ashland, Wappello county, Iowa, on the 10th day of April, 1857, and it appeared from the caption and certificate of the deposition, that it was taken on the day named in the notice, at the office of Enos Moore, a justice of the peace, of Wappello county; *Held*, That the deposition was properly suppressed.

However much passion, produced by the provocation of the plaintiff, may operate to mitigate the damages in an action of slander, it cannot wholly defeat the plaintiff's action.

Where in an action of slander, the court refused to instruct the jury, "that if the words were spoken by defendant, through heat of passion, caused by harsh and abusive words used by plaintiff towards defendant, then the words are not actionable, and they must find for defendant;" *Held*, That the instruction was properly refused.

In an action of slander, it is sufficient to prove the slanderous words substantially.

And where in such an action, the court instructed the jury, that it was not necessary for the plaintiff to prove the precise words as laid in the petition, but that it was sufficient to prove them substantially, as there set out; *Held*, that the instruction was correct.

Where in an action, when the jury was about to retire to consider of their verdict, the defendant asked that the jury might be permitted to take with them, all the papers in the cause, except depositions, and particularly the affidavits filed by plaintiff at previous terms for a continuance, which the court refused to permit, and retained the affidavits, and all the pleadings to which demurrers had been sustained; *Held*, That the court did not err in refusing to permit the papers to go to the jury.

*Appeal from the Jefferson District Court.*

THIS was an action on the case for slanderous words

spoken, commenced in October, 1852.   At the return term, defendant appeared and filed his answer, denying the speaking of the words, as charged in plaintiff's petition.   On the 26th of March, 1855, defendant filed a further answer, to which there was a demurrer, which was sustained.   In April, 1857, defendant filed what is termed "a further and additional answer."   Plaintiff moved to strike this answer from the files, and also demurred to the same, which said motion and demurrer were sustained, as to different portions of said answer.   A motion was made to suppress the deposition of one Laforce, taken on the part of defendant, which was also sustained.   On the trial, certain instructions, given by the court, were excepted to by defendant, and he, in like manner, excepted to the refusal of the court to give certain instructions asked by him.   When the jury were about to retire to consider of their verdict, the defendant asked that they might be permitted to take with them certain papers, which was refused by the court.   Verdict and judgment for plaintiff, and defendant appeals.   The other material facts will be found in the opinion of the court.

C. Negus, for the appellant.

Slagle & Acheson, for the appellee.

WRIGHT, C. J.—The answer, filed in April, 1857, sets up some of the same matters of defence as are contained in the one filed in March, 1855.   The defendant, in the last answer, attempts to plead these matters in a more logical and definite form; and we need not, therefore, stop to inquire into the sufficiency of these portions of the first answer. By filing the further and additional answer, and thus, in effect, in this case, amending his former pleadings, defendant waived all right to complain of any supposed error in the ruling, made on the first demurrer, so far as that demurrer raised the same questions as were raised by the second one.

In the first answer, however, there is what is claimed to be, a plea in justification, which is not contained in the second, and it is urged that the court erred in sustaining plaintiff's demurrer to such plea. The substance of this portion of the answer is as follows: "And for a further answer, defendant says that the said plaintiff, either in person or through his (plaintiff's) children, and with plaintiff's knowledge and consent, did kill, take and carry away, and appropriate to his own use, chickens belonging to defendant." To understand this language, it is proper to state that plaintiff claims that defendant charged him, on several occasions, with stealing his (defendant's) chickens. That this allegation of the answer is wanting in almost every essential to make it a good plea of justification, is most manifest. It fails to confess the speaking of the words. See Starkie on Slander, 248. It fails to set forth such matters as fix upon the plaintiff any crime, much less the specific one imputed to him by the words charged in the petition of plaintiff. The justification, so far from being in point of law, identical with the charge in the petition, falls short of justifying any offence, or of showing that, in the taking of said chickens, there was any crime whatever. That a plea, which relies upon the truth of the words spoken, as a bar to recovery, is fatally defective, which is wanting in the particulars above suggested, is well settled. See 1 American Leading Cases, 178, and cases there cited.

The questions raised by the demurrer, and motion to strike the second or last answer, may be considered under two heads: First, such as relate to those portions which were set up in the answer, filed March 26, 1855. Second, such as relate to the new and distinct grounds of defence, therein contained. In the third clause of his answer, defendant sets up that said words, charged in plaintiff's petition, if spoken by him, were spoken at a time when plaintiff was speaking and uttering false and scandalous words about defendant, (giving the words spoken by plaintiff,) and at a time when defendant was angry and in a passion, occasioned by the speaking of said false and scandalous words by plain-

tiff. That the matters contained in this clause, if true, would not bar plaintiff's recovery, we suppose to be too well settled to admit of controversy. If, however, the words were spoken through heat of passion, or under excitement, produced by the immediate provocation of plaintiff, such excitement or passion may be shown in mitigation of damages; "for evidence that the speaking was impulsive and involuntary, undoubtedly diminishes malice, as understood by the law." *Larned* v. *Buffington*, 3 Mass. 546; *Seely* v. *Lovejoy*, 8 Blackf. 462. And, it may be stated as a general principle, that all the immediate circumstances, under which the words were spoken, are proper to be shown to the jury, as they define the true character of the speaking, which is alleged to be slanderous. See note to *Gilman* v. *Lovell*, 1 American Leading Cases, 203. And this passion—this provocation—and their immediate circumstances, may be shown, without specially setting them up or pleading them. Under the former system of pleading, they might be shown under the general issue; and so, we think, they may be under our practice, without alleging them specifically in an answer.

In the case before us, as these matters were set up, we think the court might well have overruled the demurrer, upon the ground that plaintiff could not complain, if by such answer, he was notified that defendant would insist on the trial, that the words were spoken under the circumstances stated. But as the thing, if proved, could not bar plaintiff's recovery, but might under the general denial of the speaking of the words, be received in mitigation of damages, we cannot say there was error in sustaining the demurrer to this portion of the answer. If it appeared that defendant proposed to prove the same facts on the trial, and was not permitted to do so, the question would be quite different. Nothing of the kind is shown, however. For aught that is disclosed, he had the benefit of all these circumstances on the hearing before the jury. There was certainly nothing to prevent it.

In the first, second and fourth clauses of the answer, it is set forth, (but with what legal sufficiency, we do not stop to inquire,) *first*, that plaintiff is owing and stands indebted to defendant in the sum of six dollars, for the value of four dozen chickens; *second*, that plaintiff spoke of defendant certain scandalous and defamatory words, to his (defendant's) great damage and injury, which sum of six dollars, and the damages resulting from such slanderous words, defendant proposes to offset against any damages which plaintiff may show he has sustained by the supposed speaking of the words charged in plaintiff's petition; and *third*, that plaintiff's character was so bad in the community in which he resided, that he sustained no injury from the speaking of the words by plaintiff. All these matters were struck from the files, on the plaintiff's motion, and this is now assigned for error. We cannot say that the court erred in sustaining this motion. It will be remembered that this case was commenced in 1852, and that at the first term, defendant filed his answer, denying the speaking of the words. On that issue, a trial was had, in which plaintiff recovered. Defendant appealed to this court, where the decision was in his favor. The cause being remanded, a further answer was filed in March, 1855, which, however, contained none of these matters now under consideration. The demurrer to the answer filed in 1855, being sustained, the case stood at issue upon the answer filed in 1852, until the 13th of April, 1857, (the day before the cause was finally tried,) when the defendant sets up in his defence new matter—matter which raises new issues, and which must almost as a necessary consequence, work a continuance of the cause. No reason is shown why these same matters were not set up long before this trial. There is nothing to show that they came to defendant's knowledge since filing his former answer; nor does it appear but that he knew them all as well before, as after first pleading to plaintiff's petition. Under such circumstances, we are far from being satisfied that there was error in refusing to defendant the benefit of such further or supplemental answer. To allow a party to make such a

McClintock v. Crick.

supplemental pleading, rests so peculiarly in the discretion of the court below, that we should want to be much better satisfied than we are in this case, that such discretion had been improperly exercised, before we would interfere with it.

We are next to inquire, whether there was error in suppressing the deposition of the witness Laforce. It seems that plaintiff was notified that the deposition of this witness, would be taken at the office of Squire Moore, in Ashland, Wappello county, Iowa, on the 10th day of April, 1857. The caption and certificate attached to the deposition, show that it was taken on the same day named in the notice, at the office of Enos Moore, a justice of the peace of Wappello county. The objection urged is, that it does not appear that the deposition was taken at the office of Squire Moore, as stated in the notice, but that, on the contrary, it was taken at the office of Enos Moore. The Code provides that reasonable notice of the time and place where a deposition will be taken, must be given to the opposite party; and the certificate to be attached to the deposition, when taken, must state that it was subscribed and sworn to at the time and place therein mentioned. §§ 2446, 2458. We need hardly say, that the deposition must, in the absence of agreement or consent, express or implied, to the contrary, be taken at the place named in the notice, and that if taken at any other place, it should be suppressed. The question in this case is whether, (plaintiff not having appeared or taken part in the examination,) it sufficiently appears that this deposition was taken at the place named in the notice. And to hold that it does sufficiently appear, we are asked to conclude or presume that Squire Moore and Enos Moore are one and the same person, and that the office of Squire Moore is the office of Enos Moore. We think that this would be asking us to presume too much. The objection of plaintiff may in fact be purely technical, and yet we cannot think we would be justified in holding the persons to be the same. If the notice had designated the magistrate as Esquire Moore, there would be less force in the plaintiff's objection. By such a

designation or title, the party might well be understood to refer to a justice of the peace—to an officer in his official capacity. When in the use of proper language, however, we speak of Squire Moore, Esquire Smith, or Squire Jones, it cannot with propriety be said, that we refer to these persons as magistrates, but that we call them by their proper Christian names. Squire, if not in so general use, is at least, as well recognized as a name, as John, or Robert, or Enos; and we cannot but conclude, that the objection in this case is equally as available, as if the notice had specified the office of John, instead of Squire Moore.

The defendant asked the court to instruct the jury, that if the words were spoken by defendant through heat of passion, caused by harsh and abusive words used by plaintiff, towards defendant, then the words are not actionable, and they must find for defendant, and this refusal is now assigned for error. We have already, in considering the demurrer to the third clause of defendant's answer, sufficiently disposed of this objection. However much such passion and provocation might operate to mitigate the damages, they could not wholly defeat plaintiff's action. It is next objected that the court instructed the jury, that it was not necessary for plaintiff to prove the precise words as laid in the petition, but that it was sufficient to prove them substantially as there set out. That this is the rule now universally recognized in actions of this kind, we understand to be well settled. *Olmstead* v. *Miller*, 1 Wend. 506; *Bassett* v. *Spofford*, 11 N. H. 127; *Leniville* v. *Earlywine*, 4 Blackf. 470; Starkie Ev. Vol. II, 618, 619, and notes.

When the jury were about to retire to consider of their verdict, the defendant asked that they might be permitted to take all the papers in the case, except depositions, and particularly the affidavits filed by plaintiff at previous terms, for a continuance. The court refused, however, to permit this, and retained these affidavits, as also all the pleadings to which demurrers had been sustained, and defendant again excepted. The Code provides that the jury upon retiring for deliberation, may take with them all pa-

pers, except depositions, which have been received as evidence in the cause. § 1783. In this case, there is no pretence that the affidavits for a continuance were used as evidence. As papers in the cause, the jury had nothing to do with them. And the same is true of the answers to which the demurrers had been sustained; so far as that trial was concerned, they were as though they had never been filed.

We have thus disposed of all the errors assigned, and conclude that the judgment of the court below must be affirmed.