PERRINE v. WINTER.

73 645
94 606

1. **Slander:** EVIDENCE: OCCUPATION OF PLAINTIFF: CIRCUMSTANCES EXCITING SYMPATHY. In an action by a woman against a man for slanderous words spoken against her chastity, *held* that she might show what her occupation was, but that evidence showing that she was, at the time the words were spoken, engaged in aiding a sister in want, and that in so doing she performed severe manual labor and endured hardships, was immaterial to the issues, and prejudicial, because it was calculated to arouse the sympathies of the jury in her behalf, and thus enhance the damages.

*Appeal from Washington District Court*—HON. W. R. LEWIS, Judge.

WEDNESDAY, DECEMBER 21.

ACTION for slanderous words spoken by defendant of and concerning plaintiff, imputing a want of chastity in the use

of exceedingly vulgar language. Trial by jury, verdict for plaintiff for $800 damages, and judgment. Defendant appeals.

*C. J. Wilson* and *H. & W. Scofield*, for appellant.

*J. F. Henderson* and *Dewey & Eicher*, for appellee.

SEEVERS, J.—The defendant denied the allegations of the petition, and pleaded a counter-claim, and certain matters in mitigation of damages. The plaintiff was introduced as a witness in her own behalf, and the following questions were asked her, and she gave the evidence hereafter stated in reply thereto: (1) "You may state to the jury how you have been making your living for a year or two past, there or elsewhere. *Answer.* I have been working round taking care of the sick, and when not working out would go home with them." (2) "You may state whether you were working out a portion of the time, if you remember. *Answer.* I had been working out, but had to come and help her, as his health had failed, and he came to be confined, so that she could not get along." (3) "You may state what you were engaged at, what was your business and duties there, during the time you were assisting her there at the time you have spoken of. *Answer.* I was helping her. He had closed up the fence so that we could not get a team in to plow, and so we had to go to work and spade our garden and cabbage patch and everything ourselves." The foregoing questions were objected to, but the objections were overruled. The defendant also moved the court to exclude the latter part of the answer to the second question, and to exclude the answer to the third question, which motions were overruled.

I. The plaintiff and Mrs. Patrick were sisters, and the former was making her home with her sister and her husband at the time the slanderous words were spoken; and in the answer to the second question she states that Mr. Patrick's health had failed, and for this reason her sister could

not get along, presumably, without the plaintiff's aid. This clearly was immaterial, incompetent, and, we think, prejudicial. The fact that Patrick was sick, and his family dependent on the labor of the plaintiff, was calculated to excite sympathy, and have a tendency to increase the damages. The answer to the third interrogatory is also incompetent, and should have been struck out. The fact that the defendant had closed the fence, and the plaintiff was compelled to spade up the garden, had no bearing on the issues, and was calculated to excite sympathy.

II. Counsel for the appellee insist that the questions asked were proper, and that evidence may be introduced in actions of this character showing the occupation of the plaintiff, and this, we think, is true; and they further contend that it is competent to show the rank and condition of life of either plaintiff or defendant, in aggravation or mitigation of damages, and counsel cite Field, Dam., § 694, where the author says: "So, in actions for libel or slander, it is proper to show the rank and condition of life in aggravation of damages, and the defendant may avail himself of such evidence, as far as it is favorable therefor, in mitigation." Conceding this to be the rule, it does not necessarily extend beyond showing one's occupation, or rank and condition in society; and this is the extent of the holding in *Larned v. Buffinton*, 3 Mass., 546. In *Karney v. Paisley*, 13 Iowa, 89, and other cases, it has been held that the plaintiff may show the "condition and pecuniary circumstances" of the defendant, upon the ground that slanderous words spoken by a person of wealth and influence ordinarily have a greater effect upon the minds of others than if the same words had been spoken by one who did not possess such wealth and influence. There are grave doubts whether this reasoning is correct, because it is not universally true that a man possessed of wealth has the confidence and respect of the community in which he lives. But, conceding the rule, it does not meet the necessities of this case. It has been held that the

defendant cannot show his own poverty in mitigation of damages, (*Case v. Marks*, 20 Conn., 248,) and also that the plaintiff cannot prove, in aggravation of damages, that " he was a poor, hard-working, industrious man," (*Pool v. Devers*, 30 Ala., 672.) Our attention has not been called to, nor has our own search, in the limited time at our command, enabled us to find, any adjudged case which holds that the plaintiff may prove his own poverty in aggravation of damages, and upon principle we think such evidence is not admissible. The damages should be neither diminished nor enhanced because of the poverty of the plaintiff. Damages in actions of this character are ordinarily largely imaginary, and the sympathy of the jury should not be quickened by evidence showing the poverty of the plaintiff. The rule allowing evidence to be introduced showing the wealth of the defendant in aggravation of damages constitutes an exception in favor of the plaintiff in this class of cases, (*Hunt v. Chicago & N. W. R'y Co.*, 26 Iowa, 366,) and is ordinarily, we think, sufficient to fully protect the rights of the plaintiff. It will be conceded that it was competent for the plaintiff to show that she was a nurse, or washerwoman, or that a man may prove that he is a teamster or laborer; but this, we think, is as far as he can go in this direction in making out the case in chief. It seems to us the plaintiff was allowed to do more than this, and that the object and intent of the questions asked was to show that she was a poor woman, and in this view we are confirmed by the course of argument adopted by counsel in addressing the jury; and that the jury were influenced by such evidence, we think, is reasonably certain, when the amount of the verdict under the evidence in this case is considered.

REVERSED.