ALEX CAIN, Appellee, v. JOHN K. OSLER, Appellant.

**LIBEL AND SLANDER:** Justification—Plea of—What Constitutes.
1 The plea of justification, to a charge of slander, must be as broad as the charge.

> PRINCIPLE APPLIED: Plaintiff pleaded that he was slandered by defendant saying: "He (plaintiff) has stolen my steer. He (plaintiff) is a damn drunken thief." Defendant pleaded that what he really said was: "He (plaintiff) had no right to sell the steer and if he did so it was the same as stealing." Defendant pleaded that his statements were true and were made without malice. *Held,* not to constitute a plea of justification.

**PLEADING:** Motion Treated as Demurrer—When Permissible. A
2 motion may be treated as a demurrer, when the pleading attacked is bad.

**LIBEL AND SLANDER:** Damages—Mitigation—What Constitutes.
3 A good plea in mitigation of damages to a charge of slander must, from its nature, be a confession of the charge and a pleading of facts tending to lessen defendant's culpability.

**LIBEL AND SLANDER:** Substantial Proof of Charge—What Is. It
4 is strictly accurate to say that plaintiff need only prove the charge in *substantially* the same words as alleged, necessarily meaning thereby, words of substantially the same meaning.

**LIBEL AND SLANDER:** Mitigating Circumstances—Effects Exem-
5 plary Damage Only. "Mitigating circumstances," tending to show want of malice only, can be considered only in reduction of "exemplary" damages.

**LIBEL AND SLANDER:** Excessive Damages—Passion and Preju-
6 dice—Verdict Set Aside. Excessive damages, appearing to have been given under the influence of passion and prejudice, are ground for new trial.

> PRINCIPLE APPLIED: Action for slander in charging plaintiff with stealing a steer. Evidence tended to show defendant's ownership of the steer and sale thereof by plaintiff, without authority, to a second party, who sold to a third party, all on

same day. Jury returned verdict for $2,500, manifestly being largely exemplary damages. Evidence justified the conclusion that the defendant honestly believed the animal found belonged to him. *Held*, the verdict was result of passion and prejudice, and new trial should be granted.

**APPEAL AND ERROR: Misconduct of Counsel—Reference to Poverty of Plaintiff—New Trial.** Misconduct of counsel in referring to plaintiff's poverty, of which there was no evidence, and as to which there could not have been, properly, any evidence, was held prejudicial in an action for slander.

**LIBEL AND SLANDER: Evidence—Nature of Transaction.** In an action for slander growing out of a charge of stealing a steer which plaintiff had sold and which had been resold, all on same day, *held*, defendant should have been allowed to show the nature of the transaction between plaintiff and the other parties to the sales.

*Appeal from Pottawattamie District Court* at Avoca.—HON. E. B. WOODRUFF, Judge.

FRIDAY, DECEMBER 18, 1914.

ACTION at law for an alleged slander. Verdict and judgment for plaintiff in the sum of $2,500.00, and defendant appeals.—*Reversed*.

*Preston & Dillinger*, and *John P. Organ*, for appellant.

*Genung & Genung*, for appellee.

DEEMER, J.—Plaintiff alleges that the defendant used the following false, defamatory and slanderous words of and concerning him (plaintiff) in the presence of Mrs. Martin Larsen and Mine Schenbaugh, at the home of Martin Larsen in Pottawattamie County, Iowa, some time in the month of September, 1911: "He (plaintiff) is a damn thief; he has stolen my steer; he is a damn, drunken thief." This is denied by defendant and, without averring whether tendered in mitigation or as a justification, he pleaded the following:

"That at and for some time prior to the alleged slander, he, defendant, was the owner of the red steer mentioned in the petition, and that plaintiff was, and had been for some

time, prior thereto, a tenant upon the lands of defendant, and was familiar with the cattle owned by the latter and kept upon his farm.

"That some time prior to the alleged slander the said steer disappeared from or was taken from the farm of defendant without his knowledge or consent, and a short time subsequent thereto the said steer was in the possession of the plaintiff, and by him was sold to one Ade Osler and by the latter sold to one Mart Larsen without defendant's knowledge or consent.

"That shortly thereafter defendant discovered said steer in possession of said Larsen and claimed the same as his own. That Larsen at the time informed the defendant of his purchase of the steer from the said Cain, and the defendant informed Larsen that Cain had no ownership in the steer, but that it was the property of the defendant and that he thereupon made claim to the same.

"That the steer in question was in fact taken by said Cain and appropriated to his own use and sold by him as aforesaid. And the statements made by the defendant concerning his ownership of the same, and that the plaintiff had no ownership of the same, or right to dispose of the steer, were in fact true. And defendant at the time believed the same to be true, and they were made in good faith and without any malice upon the part of the defendant toward plaintiff."

In addition thereto, he pleaded, in an amendment to his answer:

"That the statement he made to Mrs. Larsen was that the red steer was his property and that Alex Cain had no right to sell it and that if he, Cain, did sell the steer, it was the same as stealing. That such statement was made to Mrs. Larsen under the conditions and in the manner following, to wit: Defendant at the time had gone to the Larsen place to look at the steer to see if the same was his property, and found that it was branded with his brand as it had been put on a bunch of

cattle on or about December 6, 1910. He then told Mrs. Larsen that the steer was his and had his brand on it. In reply Mrs. Larsen said that they, meaning herself and husband, didn't steal the steer, that they bought the steer of Ade Osler who had bought it of Alex Cain. Defendant thereupon said that he did not accuse them of stealing the steer, that he was satisfied that so far as they were concerned they had come by it in a legitimate way, but that if Alex Cain had sold the steer it was the same as stealing, that he, Cain, had no right or authority to sell it. And such statements were in fact true and the defendant believed them to be true, and he made the same in good faith and without malice upon his part toward the plaintiff.

"Defendant for further answer, and by way of justification of the charge of slander made in this action, alleges:

"That at the time stated in the petition when it is claimed that defendant slandered the plaintiff, he, defendant, said to and in the presence of Mrs. Mart Larsen, and of and concerning the plaintiff, that 'if Alex Cain had sold the steer it was the same as stealing.' That at that time he was speaking of the red steer mentioned in the petition; that said steer had prior to that time been sold by Alex Cain, the plaintiff, to one Ade Osler, and the latter had sold the same to Mart Larsen, and defendant had been so informed before such statement was made.

"That such statement was the only one of that kind or character that defendant made to Mrs. Mart Larsen or in her hearing, or in the hearing of any other person named in plaintiff's amendment to his petition. And such statement was in fact true at the time he made it, and if a true or fair construction of the same is that he charges plaintiff with the theft of said steer then defendant alleges such charge to be true."

Upon plaintiff's motion, the matters pleaded in this amendment were stricken, and of this, complaint is made.

The testimony offered by plaintiff tended to show that defendant said to Mrs. Larsen:

"He said it was a stolen calf; that Alex stole it; he didn't say when he stole it or where he stole it. He said Alex Cain stole the steer; it was his and he was going to drive it home. He asked. me if Mr. Larsen got the. steer of A. F. Osler and I told him he did, and he said A. F. Osler got it of Alex Cain, and he said that Alex Cain stole that steer of him and he was going to drive it away."

Another witness testified that defendant said:

"Jim Osler said Alex Cain stole the calf that Mr. Larsen had, and that he was going to have the calf if it cost him a $1,000."

Defendant had another and entirely different version of the matter and also introduced testimony tending to show that Cain had possession of the steer in question, and sold it to A. F. Osler, who in turn sold it to Martin Larsen, from whom he (defendant) thereafter replevied it as his property. The replevin case was tried before a justice, the jury being unable to agree, and before another trial could be had, the steer died; but in the meantime, defendant, recognizing that Larsen had paid for the steer in good faith, refunded him the money he had paid.

A calf skin was presented at the trial which it is claimed was the hide taken from the dead animal, for the purpose of proving that the animal belonged to the defendant, the identification being a brand upon the hide.

On the issues joined and the testimony adduced, the case went to a jury with the result hitherto mentioned.

I. Complaint is made of the ruling striking the amendment to the answer. The ruling on the motion attacking the third division was correct. The plea did not amount to a justification, for it was not an admission of the speaking of the words charged in the petition, and the averment as to the truth was not as broad as the charge and of the very charge. In other words, instead of admitting the speaking of the words

1. LIBEL AND SLANDER: justification: plea of: what constitutes.

charged and pleading their truth, it alleged the speaking of other words, and averred the truth of those words. This tendered a false issue. *Snyder v. Tribune Co.*, 161 Iowa 671; *Prewitt v. Wilson*, 128 Iowa 198; *McClintock v. Crick*, 4 Iowa 453; *Halley v. Gregg*, 82 Iowa 622; *Mulvaney v. Burroughs*, 152 Iowa 439.

It is not important, in view of the court's ruling, that this division of the answer was attacked by motion instead of demurrer; the court was justified in rul-

2. PLEADING: motion treated as demurrer: when permissible.

ing upon the motion as if it were a demurrer, and the name of the pleading attacking this division of the answer was unimportant.

We do not understand just what defendant intended to plead in the other division of his amended answer. Surely it is not sufficient as a plea of justification, for the reasons just

3. LIBEL AND SLANDER: damages: mitigation: what constitutes.

stated regarding the ruling on the other division of the answer. If not in justification, then it must have been intended as a plea in mitigation; for otherwise it would amount to

nothing more than a pleading of evidence in support of the denial of the charge made by plaintiff. Do the facts pleaded constitute mitigating circumstances, upon which defendant may rely? In general, mitigating facts are such as impeach the character of plaintiff or tend to negative malice on the part of the defendant. *Marker v. Dunn*, 68 Iowa 720.

The matter stricken out in no manner affected plaintiff's character. If, then, it amounted to anything, it was as a plea of an honest belief in the truth of the charge, or of circumstances which indicated defendant's good faith in making the charge, or that he was without malice in so doing. *Prewitt v. Wilson, supra; Morse v. Printing Co.*, 124 Iowa 707.

A plea in mitigation must, in its nature, be a confession and avoidance and not a pleading of some other matter and a justification thereof. Looking now to the pleading attacked, it will be observed that it does not admit the use of the slanderous words charged, nor does it allege that they were true,

or that defendant believed them to be true. On the contrary, he alleges that he did not charge anyone with stealing the steer, but that if certain things were done it was the equivalent of that for the reason that plaintiff had no authority to sell the steer. In the original answer the defendant pleaded the truth of all charges made by him, not only as a complete defense, but also that he believed the same to be true and that the statements were made by him in good faith and without any malice, which would be a plea in mitigation. The amendment stricken added nothing material to this division as originally pleaded, and there was no error in striking it.

II. The court in several instructions said in substance that it was not necessary for plaintiff to prove the speaking of the precise words alleged in the petition, but that they must be substantially the same. This is complained of, the criticism being that they must be substantially the same in *meaning*. Of course they must be substantially the same in meaning, but it is apparent that if they are not substantially the same, they are not the same in meaning. Language is used to convey ideas, and when we speak of a phrase being substantially the same as another, of necessity we mean that it conveys the same thought and is the same, or substantially the same, in meaning. The word "substantially" means in the matter of substance, rather than mere form. Such instructions have heretofore been expressly approved: *Bower v. Deideker*, 38 Iowa 418, 420; *McClintock v. Crick*, 4 Iowa 453; See also *Desmond v. Brown*, 29 Iowa 53.

4. LIBEL AND SLANDER: substantial proof of charge: what is.

III. The trial court instructed the jury on the nature of defendant's plea in mitigation, and said in effect that it could only be considered in mitigation of the damages, and in its instruction regarding the damages to be awarded, said:

5. LIBEL AND SLANDER: mitigating circumstances: effects exemplary damages only.

"He is entitled to recover such sum as the evidence shows will fairly and reasonably compensate him for any damage

to his character, reputation and good name in the community where he lives, and such damages are called actual damages, and there is no rule by which to measure them but much must be left to your sound judgment and discretion under all the facts and circumstances before you, and if it further appears from the evidence in speaking said words or some of them, if he did speak them, the defendant was moved to do so with actual malice, that is, with the purpose and intent to hurt and injure plaintiff's good name, then you would have the right in addition to the award of actual damages to allow him exemplary damages. Such damages, when allowed, are given for the purpose of punishing and to deter the defendant and others from the commission of a like wrongful act. You are not required in any case to allow exemplary damages, and you cannot in any case do so unless you first find plaintiff has suffered some actual damages, as before explained, and actual malice on the part of the defendant is also shown, taking into consideration all the facts and circumstances in evidence, if any, in mitigation of damages together with all other facts and circumstances before you relating to the question of actual malice.''

The effect of this instruction was to tell the jury that the mitigating circumstances should only be considered as bearing upon the allowance of exemplary damages. Although there is a conflict in the cases upon this proposition as applied to actions for defamation, we have announced the doctrine which counsel assume the instruction states. *Brandt v. Story,* 161 Iowa 451; *Morse v. Printing Co.,* 124 Iowa 707.

This doctrine has peculiar, if not special application to those mitigating circumstances tending to show want of malice on the part of the defendant. Where the mitigating circumstances relied upon relate to plaintiff's character, or to rumors current in the community, or other matters not related to defendant's motive, it may well be said that such mitigating circumstances should be considered with reference to the

actual amount to be awarded the plaintiff. See *Sedgwick on Damages*, 9th Ed., Sec. 446; *Newell on Slander and Libel*, 3rd Ed., Secs. 1044 and 1056, and cases cited. As applied to the facts of this case, the instruction was not erroneous.

IV. A large amount of testimony was adduced tending to show that the animal which defendant found in Larsen's possession was defendant's property, and that Larsen purchased it from one Ade Osler, who testified

6. LIBEL AND
SLANDER: ex-
cessive dam-
ages: passion
and prejudice:
verdict set
aside.

that he purchased it from plaintiff, who had no authority to sell it. The hide of what was claimed to be the animal found in Larsen's possession was introduced in evidence, and it had defendant's brand upon it. Again, there was other testimony tending to show that it was one of a bunch of cattle purchased by defendant at Omaha, Neb., originally for the joint benefit of plaintiff and defendant, but to which plaintiff subsequently and before the sale released all claim. This testimony, or some of it, was not believed by the jury, but there was enough of it to justify the conclusion that defendant honestly and in good faith believed that the animal was his, and it is not claimed that plaintiff had any authority to sell it, if it belonged to defendant as claimed. The jury, notwithstanding this testimony, found a verdict against defendant for the sum of $2,500.00.

Under the circumstances developed on the trial, the larger part of the award must have been based on the theory that defendant should be punished for his wrongful act; or, in other words, the damages were largely exemplary and not compensatory in character. In a trial before a justice of the peace, a jury disagreed regarding the ownership of the animal, and there is nothing to indicate that defendant intentionally and knowingly made claim to an animal which he knew was not his own. Under the circumstances, it is clear that the verdict is too large, so much so indeed as to clearly indicate passion and prejudice on the part of the jury. We would not be doing our duty under the law to permit such a verdict to

stand, and as the award is such as to indicate passion and prejudice on the part of the jury, the only adequate remedy is to set the verdict aside and to award a new trial rather than to order a remittitur. *Saunders v. Mullen,* 66 Iowa 728; *Sadler v. Bean,* 38 Iowa 684.

V. Misconduct of plaintiff's counsel is relied upon as a ground for a new trial. But for the size of the verdict, we should be disposed to say that this was a matter of discretion for the trial court, and that the greater

7. APPEAL AND
ERROR: misconduct of counsel: reference to poverty of plaintiff: new trial.

part of it was due to the fact that defendant's counsel introduced the subject in his address to the jury, and that plaintiff's counsel was making reply thereto. In view of the size of the verdict, we are constrained to say that doubtless it was due to the nature of counsel's argument. We here quote some of the matters which are complained of. Plaintiff's counsel said in argument:

"I have demonstrated fairly well to this jury that there has been some kind of a trick, I am not here to say who played the trick, but there was a trick played on you. (There was no evidence of any substitution of hides.)

"Why, Great God, No! I like Alex Cain, I like him because when a man, even though he owns four hundred and forty acres of land calls him a thief, so that his family and his people and children knows it, has got the sand to come before twelve men and say to them, 'I have committed no wrong.' Why they knew it was false, they knew that he owned the steer, and they are both in the court to protect the name of the father, they, of all the people in the world know it is not true.

"I will admit that Alex Cain is a poor man. Alex Cain is a poor man. He had only two cows and his team and his children but he worked for three years and a half on that farm—"

"Organ: 'If your honor please, we object to this state-

ment as improper, . . . it is misconduct on the part of counsel to make a statement of that character to the jury.''

''The Court: 'I suppose the financial condition of the plaintiff is not involved in this case.' ''

''Genung: 'Why, I think it is involved myself, the financial condition of the defendant is involved in this case, and the evidence shows that he was a tenant, and I have got a right I think to discuss the tenant's condition as distinguished from that of the landlord.' ''

''Organ: 'I take exception to that last remark.' ''

'' (No ruling.) ''

''Genung: 'Jim Osler was the landlord. He owned 440 acres of land. Alex Cain for three and a half years had been his tenant. The tenant owned but two cows and two calves. Jim Osler said that he went and bought the cattle that was branded. His own cattle mind you at home was not branded up to that time because he said I branded my own cattle with the brand on the other hip. Up to this time he had not been using the branding iron on his own cattle. But he branded them on the other side. Now the evidence shows that poor Alex Cain had four head of cattle, he had two cows and two calves. · That is all that he owned except a share interest in these cattle that had been bought in Omaha,—

''Organ: 'If your honor please, we object to that statement as being improper, not being supported by the testimony, and no testimony of that kind could possibly be admitted in the case, it is misconduct on the part of counsel to make a statement of that character to the jury. I would like to have a ruling on that.' (No ruling.) ''

It is well known that while the wealth and social position of defendant in actions of this character may be shown, it is not proper to prove plaintiff's poverty in aggravation of damages. *Perrine v. Winter*, 73 Iowa 645.

There was indeed no proof of plaintiff's poverty, but this was injected into the case in the argument of counsel,

over defendant's objections. This doubtless accounted, in part, at least, for the size of the verdict.

VI. We are also of opinion that defendant should have been permitted to show the nature of the transaction between plaintiff Cain and Ade Osler, which resulted in the trans-

8. LIBEL AND SLANDER: evidence: nature of transaction.

fer of the title from one to the other; and of the claimed sale by Osler to Larsen. These transfers were made on the same day, and it is claimed were unusual in character in that plaintiff Cain got nothing for the calf; and the transaction as a whole was not indicative of a good-faith sale. This testimony was excluded. We think that defendant should have been permitted to show how plaintiff dealt with the property, in view of the claim that it was not his, and that he had no authority to dispose of it.

For the errors pointed out, the judgment must be, and it is—*Reversed*.

LADD, C. J., GAYNOR and WITHROW, JJ., concurring.