IDA SCLAR, Appellee, v. HARRY RESNICK, Appellant.

**TRIAL: Direction of Verdict—Undenied but Impeached Testimony.**
1 One or more witnesses whose testimony, if true, establishes the cause of action pleaded, may have their credibility so successfully shaken on cross-examination as to present a jury question, even though the opposing party did not specifically deny the testimony.

**TRIAL:** **Instructions—Manifest Purpose.** When the language of an instruction correctly presents to the jury a material principle of law, and when such is manifestly its *sole* purpose, it will not be stamped as erroneous because an unnecessary phrase or clause thereof is incorrectly stated, but subsequently properly covered.

**LIBEL AND SLANDER:** **Mental Pain.** One who has been slandered by words actionable *per se* may, under proper pleadings, testify to the mental pain suffered thereby.

**LIBEL AND SLANDER:** **Mitigation of Actual Damages.** Mitigating circumstances tending to prove the bad character and reputation of plaintiff as to the very trait as to which plaintiff claims to have been slandered, may be considered in reduction of *actual* damages, even though defendant maliciously spoke the slanderous words.

**LIBEL AND SLANDER: Repetition of Slander to Unimpleaded Parties.** Testimony tending to show the repetition by defendant of a slander to persons other than those specially pleaded, is receivable on the issue of *malice*, but not as a basis for the *assessment of damages.*

**LIBEL AND SLANDER:** **Reputed Wealth of Defendant.** The general reputation and standing of defendant in an action for slander are admissible as bearing on the influence his words may have in the community; *but testimony tending to show his reputed wealth in specific amount is wholly inadmissible.*

*Appeal from Lee District Court.*—John E. Craig, Judge.

November 23, 1921.

Action for slander. Plaintiff sought to recover damages for slanderous words claimed to have been uttered by the defendant. Defendant filed a counterclaim, and sought damages for slanderous words claimed to have been spoken by plaintiff of and concerning defendant. The jury rendered a verdict in favor of the plaintiff, and the defendant appeals.—*Reversed.*

*Jesse Schlarbaum* and *E. H. Pollard,* for appellant.

*E. C. Weber* and *J. M. C. Hamilton,* for appellee.

Faville, J.—Appellee's petition is in three counts, each count charging substantially the same slanderous words, but alleging the utterance of the same on different occasions and in the presence of different parties. Appellee alleges that, on

the said occasions, the appellant charged the appellee with being a whore and an immoral woman. The appellant, by way of counterclaim, charges that the appellee, on a certain occasion, charged the appellant with being a thief, and with having bribed the justice of the peace in the trial of a certain lawsuit in which appellee was interested.

I. The appellant requested the court to peremptorily instruct the jury to return a verdict for the appellant on his counterclaim, for such an amount as the jury should find the appellant entitled to. The theory of the appellant at this point is that two witnesses for the appellant testified that the appellee had stated, in the presence of said witnesses, that the appellant was a thief, and that, as the appellee did not specifically deny the making of said slanderous statement, appellant was entitled to the instruction asked.

1. TRIAL: direction of verdict: undenied but impeached testimony.

We do not think that, under the record in the case, the court erred in submitting the question to the jury. The cross-examination of the appellant's witnesses on this question disclosed a situation that at least left it for the jury to determine the credibility of the witnesses in respect to the matter about which they had testified. The court very fully and carefully instructed the jury in respect to the appellant's counterclaim and the consideration which the jury should give the same. The appellee by reply had squarely put in issue all the allegations of the appellant's counterclaim. Even though the appellee did not, as a witness, specifically deny upon the trial the making of the alleged slanderous statements as testified to by the witnesses for the appellant, still, under the circumstances of the case, it was a question for the jury to determine whether appellee uttered them, as alleged; and that question was properly submitted to the jury. There was no error at this point.

II. Error is predicated upon the giving of Instruction 23, wherein the court told the jury that the appellee would be liable on appellant's counterclaim, if at all, only for damages suffered by the appellant by reason of the statement made by the appellee in the presence of certain named witnesses, and not for damages, if any, resulting to appellant by repetition of said statement by said

2. TRIAL: instructions: manifest purpose.

witnesses or by other persons. Appellant complains that this instruction did not include the names of all the witnesses who testified to the alleged slanderous words claimed to have been uttered by the appellee. This may be conceded, and still appellant's point is not well taken. In other instructions the court fully and carefully instructed the jury in regard to the utterance of the alleged slanderous words by the appellee, as charged in appellant's counterclaim. The very clear and obvious purpose of the instruction herein complained of was to advise the jury that the appellee could not be liable for repetition of the alleged slanderous statements by persons who heard them or by others. There was no error in this instruction of which appellant can complain.

III. Appellee testified that she was informed by one Hays that the appellant had made the alleged slanderous statements, and over objection was permitted to testify regarding mental pain that she suffered because thereof. The words charged to have been uttered in the instant case were actionable *per se*. We have held that mental pain and suffering may be considered by the jury in determining the amount of damages in cases where the words spoken are actionable *per se*, and where damages for such mental pain and suffering are sought by proper pleading. *Davis v. Mohn*, 145 Iowa 417; *Mills v. Flynn*, 157 Iowa 477; *Greenlee v. Coffman*, 185 Iowa 1092.

3. LIBEL AND SLANDER: mental pain.

It was not error to permit the testimony in respect to the information that the appellee received regarding the circulation of the alleged slanderous reports by the appellant, or as to her mental suffering because thereof. The court correctly instructed the jury on the matter of repetition of the alleged slander by others, and in regard to recovery for mental pain.

IV. Appellant, in a separate count of his answer, pleaded, in mitigation of damages, that appellee was a woman of general bad character, and had a bad reputation for chastity in the city of Fort Madison; that she had frequented an apartment which was and bore the reputation of being a house of ill fame; that she associated with men and women in said place, drinking therein, and was an inmate thereof, and was so reputed to be; that she sat on men's

4. LIBEL AND SLANDER: mitigation of actual damages.

laps, with her arms around their necks, retired with divers men to rooms kept on said premises for immoral purposes, and was a prostitute; that her general reputation was that of having illicit relations with one Goldberg and with divers other men who frequently visited her house in the absence of her husband; that said facts had been learned by appellant previous to the alleged slanderous utterance, and that he believed the same to be true; that appellee, in a certain case before a justice of the peace, had testified under oath that one Novak had called her a whore in the presence of other people; and that appellee had caused some of her neighbors and acquaintances to be called as witnesses, to testify that they had heard the statement by Novak. Upon the trial, the appellant offered evidence regarding the matters alleged in this count of his answer.

The court instructed the jury that it could consider the mitigating circumstances pleaded by appellant, in arriving at the amount of damages. The court then gave Instruction 18, as follows:

"If it is not shown by a preponderance of the evidence that the alleged slanderous words were spoken without malice, then defendant's plea in mitigation would not have the effect of mitigating or reducing the damages, if any, plaintiff is entitled to recover."

Complaint is particularly made of this instruction. In previous instructions, the court told the jury, in effect, that, if the appellant uttered the words charged in appellee's petition, they were slanderous *per se*, and that the law implied that such charge was maliciously made.

The effect of appellant's plea in mitigation in the instant case was to allege that any damage the appellee may have suffered by reason of the speaking of the words charged should be mitigated because of the existing bad character and reputation of the appellee in regard to the very matters claimed to have been charged by the words uttered. By Instruction 18, the court, in effect, told the jury that it could not consider the previous bad reputation of the appellee in the community in regard to said matters, in mitigation of damages, unless the jury first found that the appellant had uttered the alleged slanderous words without any malice on his part.

In *Cain v. Osler*, 168 Iowa 59, we had under consideration an instruction in regard to the mitigation of damages. We said:

"The effect of this instruction was to tell the jury that the mitigating circumstances should only be considered as bearing upon the allowance of exemplary damages. Although there is a conflict in the cases upon this proposition as applied to actions for defamation, we have announced the doctrine which counsel assume the instruction states. *Brandt v. Story*, 161 Iowa 451; *Morse v. Printing Co.*, 124 Iowa 707. This doctrine has peculiar, if not special, application to those mitigating circumstances tending to show want of malice on the part of the defendant. Where the mitigating circumstances relied upon relate to plaintiff's character, or to rumors current in the community, or other matters not related to defendant's motive, it may well be said that such mitigating circumstances should be considered with reference to the actual amount to be awarded the plaintiff. See Sedgwick on Damages (9th Ed.), Section 446; Newell on Slander and Libel (3d Ed.), Sections 1044 and 1056, and cases cited."

In *Armstrong v. Pierson*, 8 Iowa 29, this court, speaking by Chief Justice Wright, said:

"Now, the bad character of plaintiff is no bar to his right to recover; it only goes in what is termed mitigation of damages. The law, as well as sound morality, dictates that the plaintiff whose character is bad, corrupt, and bankrupt should recover less than he who is pure and spotless. If any man, however, is charged with the commission of a particular offense, the law gives him the right, whatever his character, to appeal to the tribunals of the country for compensation, and (in the language of the court below) 'to disprove the words charged.' If the words are true, and justification is pleaded, he may recover nothing. If bad character is relied upon, and the words were false, and spoken without any just or rightful occasion, then character, however bad, will not defeat the action entirely, but may lessen the amount of recovery."

The effect of Instruction 18 is to tell the jury that, unless the appellant had shown by a preponderance of the evidence that the alleged slanderous words were spoken without malice, then, no matter whether his plea of the bad reputation of the appellee is true or not, the same could not be considered in mitigating

or reducing the damages. We do not think this is a correct rule. The appellant was not required to prove by a preponderance of the evidence that he uttered the slanderous words, if he did utter them, without malice, before he would be entitled to prove the bad reputation of the appellee in regard to the very matter charged in mitigation of damages. The words charged in appellee's petition were slanderous *per se*. Malice was implied therefrom, and the court so instructed the jury. Whether or not the appellant proved by a preponderance of the evidence that the words were, in fact, spoken without malice, he was entitled to have considered in mitigation of damages the previously existing bad reputation of the plaintiff, if such she had, in respect to the very matter regarding which the slanderous words were alleged to have been uttered.

The general rule is that, in actions of slander, two classes of facts may be pleaded in mitigation of damages:  (1) Those that tend to impeach the reputation of the plaintiff respecting the matters charged, for the purpose of showing that by reason thereof the damages suffered are slight or inconsequential; and (2) those tending to negative a malicious motive on the part of the defendant.

In this action, the mitigating circumstances upon which proof was offered relate to appellee's character in respect to the matters charged, and to rumors current in the community respecting the same; and under such circumstances, we think the true rule is that such mitigating circumstances should be considered by the jury as bearing upon the damages suffered, without requiring the jury to first find that the appellant has established by a preponderance of the evidence that the words charged were spoken without malice. Suppose appellant had admitted the speaking of the words charged. This would, in legal effect, be an admission of malice. Under the rule announced in this instruction, in such a situation, the appellant would not have been permitted to prove appellee's bad·reputation regarding the very matter involved in mitigation of damages, because, by admitting the speaking of the words, he had conceded the presumption of malice, and had not overcome it. Such is not the law.

We think the instruction complained of was erroneous,

under the facts of this case, and that appellant was prejudiced thereby.

V. As before stated, the appellee's petition was in three counts, charging appellant with the utterance of alleged slanderous words to three different people, Perry, Stone, and Hays, on three different occasions. The appellee offered in evidence the testimony of these parties, and also that of a fourth party, one Neal, who testified with respect to similar statements made to him at a time and place not charged in the petition.

5. Libel and slander: repetition of slander to unimpleaded parties.

In *Beardsley v. Bridgman,* 17 Iowa 290, we held such evidence to be admissible to show malice, but that it was not admissible to bear upon or aggravate the damages. We then said:

"And when *repetitions* of the slander, subsequent to the bringing of the action, are admitted, to show malice, it is entirely proper, if not, indeed, imperatively necessary, that the jury should be cautioned not to enhance the damages on that account, but to give damages only in respect to the words charged."

See, also, *Cushing v. Hederman,* 117 Iowa 637; *Bailey v. Bailey,* 94 Iowa 598; *Hanners v. McClelland,* 74 Iowa 318; *Halley v. Gregg,* 74 Iowa 563.

In Instruction 21, the jury was told that, in the event it awarded the appellee compensatory damages, "compensatory damages would be such as you find would compensate her for any indignity, suffering, and loss of reputation, if any, that you find from the evidence she sustained, by being brought into disgrace and public scandal by reason of the speaking of the slanderous words charged in the petition, to the witnesses Perry, Stone, Hays, and Neal."

In Instruction 22, the jury was told that the defendant is liable, if at all, only for the damages plaintiff suffered, if any, by reason of the statements made, if any, to the witnesses Perry, Stone, Hays, and Neal.

The petition, as before stated, was in three counts, charging the utterance of the alleged slanderous words on three different occasions to the witnesses Perry, Stone, and Hays, respectively. The alleged utterance of slanderous words to Neal was nowhere referred to in the petition, and was nowhere made a basis of a claim for recovery against the defendant. The evi-

dence of Neal respecting the utterance of the slanderous words to him was admissible, as above stated, on the question of malice. The court should have instructed the jury that this evidence should have been limited to this subject; but instead of so doing, the court instructed the jury that, if the plaintiff was entitled to recover, it could award her damages for the speaking of the slanderous words, not only to the three persons charged in the three counts of the petition, but also to the witness Neal. The court was in error in so instructing the jury.

No exceptions whatever were taken to the instructions that were given by the court on this subject, nor was any instruction asked by the appellant, covering this subject-matter. The alleged error was not called to the attention of the trial court in a motion for a new trial nor otherwise, so far as we can discover in the record. We therefore cannot reverse because of this alleged error, and we have given it this attention only because of the fact that we are compelled to reverse the case, and error in this regard should be avoided upon a retrial.

VI. Upon the trial of the case, the appellee, over proper objections by the appellant, was permitted to introduce evi-

6. LIBEL AND
SLANDER:
reputed wealth
of defendant.

dence of the general reputation of the appellant as to specific financial worth in the community in which he lived. Upon this subject, the court instructed the jury as follows:

"If the jury believe from the evidence that the defendant, Harry Resnick, is guilty of uttering the slanderous words charged in the petition, then they may take into consideration the pecuniary circumstances of the defendant and his position and influence in society, so far as these matters have been shown by the evidence, in estimating the amount of damages which plaintiff, Ida Solar, ought to recover, if any. But in this connection you are instructed that it is proper for you to take into consideration the question as to whether or not it is necessarily true that a man possessed of property has, from that fact alone, the confidence and respect of the community in which he lives."

It is urged that there was error in the admission of this testimony and the giving of said instruction. This question came before this court in *Karney v. Paisley*, 13 Iowa 89, decided in 1862, wherein we said:

"Against the objections of the defendant, the plaintiff on trial was permitted to show the condition of the defendant in point of property and pecuniary circumstances. It is still insisted that the objection was well taken. But to do so, in order to aggravate damages and also to allow the defendant to show his limited means, to mitigate damages, has been a rule of practice so frequently established and followed by the courts that we have no disposition to change it. Experience has not shown the propriety of abolishing such rules upon the ground that they are liable to abuse. It is always in the power of the court, in its instructions to the jury, to guard them against an improper use of such evidence, as we think was very fairly done by the court in its charge to the jury in this case. 20 Ill. 115; 4 Duer 247; 6 Conn. 24; 3 Mass. 546."

The rule therein announced has since been followed by us. In *Herzman v. Oberfelder*, 54 Iowa 83, we said:

"Whatever doubt we might have in regard to the propriety of admitting such evidence if the question were a new one, the admission of the evidence is not so clearly objectionable as to justify us in disturbing what may be considered the established rule in this state. *Karney v. Paisley*, 13 Iowa 89, 92."

In *Perrine v. Winter*, 73 Iowa 645, referring to *Karney v. Paisley*, we said:

"There are grave doubts whether this reasoning is correct, because it is not universally true that a man possessed of wealth has the confidence and respect of the community in which he lives."

In *Mills v. Flynn*, 157 Iowa 477, we approved an instruction charging the jury that it could take into consideration the pecuniary circumstances of the defendant and his position and influence in society. Said instruction contained the following clause:

"But in this connection you are instructed that it is proper for you to take into consideration the question as to whether or not it is necessarily true that a man possessed of property has, from that fact alone, the confidence and respect of the community in which he lives."

Again, in *Hahn v. Lumpa*, 158 Iowa 560, we recognized the

rule that it was competent to prove defendant's pecuniary con-
dition.

The appellant insists that, if proof of wealth is admissible
in such a case, the evidence should be limited to the actual wealth
of the defendant, and not the reputed wealth, and that defendant
is entitled to show his actual wealth. If this were so, then plain-
tiff could rebut this testimony, and the jury would easily be led
into the bewildering labyrinths of such collateral matter. The
theory of the admissibility of this evidence is solely on the
ground that, because of the reputed wealth of the party charged
with speaking the slanderous words, they have great weight in
the community where he lives, and that the injury to the slan-
dered person is enhanced because thereof. With this as the rea-
son for permitting the introduction of the evidence, it is obvious
that the proof should be confined to the reputed wealth, and not
to the actual wealth of the defendant, in any event.

The rule permitting proof of the financial standing of the
defendant in a slander suit has long been recognized in this
state. The rule originated at a time when wealth was by no
means as universally distributed as it is at the present time. No
vested rights have been or can be acquired under such a rule.
All thinking men must realize that proof of the wealth of a de-
fendant in a slander suit is a great temptation to a jury to un-
duly award damages, because of the apparent ability of defend-
ant to respond thereto. If a plaintiff is entitled, in a slander
suit, to prove the wealth of the defendant, in order to draw the
inference therefrom that, by reason of such wealth, his utter-
ances have greater weight and cause greater damage to a plain-
tiff, then it logically and consistently follows that it should like-
wise be available to the defendant charged with slander to prove
that he is reputed to be a man of limited means. If there is any
good reason why the reputed wealth of a defendant should be
established, on the theory that such wealth gives weight to his
words, then the poverty of a defendant is likewise available to
him as a defense. There is as much reason for the one rule as
for the other, and both are illogical. The establishment of such
a rule would have a tendency to lead the jury away from the is-
sue in the slander suit to the trial of the collateral matter re-

specting the wealth or poverty of the defendant. If the plaintiff is permitted to establish the reputed wealth of the defendant, the latter has the right to meet such evidence by proving his reputed wealth to be otherwise than as claimed by the plaintiff, and the jury would be led into a collateral matter wholly foreign to the issue in the case and, as we view it, not germane to its proper determination. There is no question that evidence of the general standing of a defendant in a slander suit as a man of reputation and influence in the community is admissible as bearing on the extent that the plaintiff might be damaged by the utterances of such a person, rather than by one obscure, inconspicuous, and unknown.

In *Karney v. Paisley*, supra, we intimate that, if the plaintiff were permitted to show the condition of the defendant in point of property and pecuniary circumstances, in order to enhance damages, it would be proper also to allow the defendant to show his limited means, to mitigate damages. This would be logical; but we do not think that the evidence should be admitted on either proposition.

In *Nailor v. Ponder*, 1 Marv. (Del.) 408 (41 Atl. 88), the rule is recognized that, in estimating damages, the jury may take into consideration the position, rank, and influence of the defendant in the community, but not his pecuniary condition.

"The damages are to be measured by the injury done, and not by the poverty or riches of either the plaintiff or the defendant."

In *Young v. Kuhn*, 71 Tex. 645 (9 S. W. 860), the court said:

"The question being an open one in this state, in view of the conflict of decision, we feel authorized to adopt the rule which seems to us best supported by principle, uniform in its operation, of easy application, and avoiding collateral inquiries. Such a rule, we are of opinion, requires the exclusion of such evidence as was offered in this case over the objections of appellants."

See, also, *King v. Sassaman*, (Tex.) 64 S. W. 937.

In *Rosewater v. Hoffman*, 24 Neb. 222 (38 N. W. 857), the Supreme Court of the state of Nebraska refused to admit proof of the wealth of the defendant in a slander suit, however, under

the rule of that state that punitive, vindictive, or exemplary damages cannot be allowed in a slander suit in said state.

In *Enos v. Enos,* 58 Hun 45 (11 N. Y. Supp. 415), it is well said:

"It is difficult to see upon what principle, as a legal proposition, a man's financial ability should increase or diminish the importance of his declarations on a question of another's character."

In some of the courts, the rule is recognized because it has a bearing on the amount of exemplary damages that may be allowed and the punishment that may be inflicted upon the defendant. The rule is recognized in Michigan, but with strict limitations.

In *Randall v. Evening News Assn.,* 97 Mich. 136 (56 N. W. 361), the court refused to permit the evidence of wealth where the defendant was a corporation, and said:

"Evidence of this character has been held competent by this court upon the sole ground that the defendant's reputation in this respect is an element of social rank and influence, and may, therefore, tend to show the extent of the injury suffered. *Brown v. Barnes,* 39 Mich. 214; *Farrand v. Aldrich,* 85 Mich. 593. These cases recognize the danger of opening the door to this inquiry, and therefore hold that it is the duty of the trial court to carefully caution and instruct the jury that they can consider such evidence only in its bearing upon the actual damages which the plaintiff has sustained, and that the wealth of the defendant is, of itself, no element of damage. Some of the courts which have approved the rule have evidently looked upon it with disfavor, and shown a disposition to restrict, if not altogether to reject it."

In *Ware v. Cartledge,* 24 Ala. 622, 624, it is said:

"It would seem that, if such proof is allowable in order to aggravate the damages in such cases when the defendant is wealthy, common justice would require that a converse rule should prevail in the case of poor defendants, and they should be allowed to give their poverty in evidence, to mitigate the damages. Yet nearly all the books declare that this is not the case, and common sense revolts at the idea of its adoption. For sad would be the fate of that country whose laws conceded to

the insolvent bully, seducer, or slanderer the privilege of perpetrating his wrongs with comparative impunity, under the assurance that, when sued for his practices, the damages would be graduated to his present ability to pay them, and consequently would be merely nominal. No sound principle of law tolerates such a practice. Coxe's (N. J.) Rep. 77, 80; *Morris v. Barker,* 4 Harrington's (Del.) Rep. 520; *Case v. Marks,* supra. That wealth often forms one element in fixing a man's position and elevation in society may be conceded to be very generally true; but that this alone confers high rank, and gives extensive personal and social influence, is disproved by our daily observation. Its possessors are often found among the most despised and least influential among us. While, on the other hand, rank, influence, and power are all combined in persons of very inconsiderable estate. When this proof is admitted, it is upon the presumption that wealth gives influence. Thus, the plaintiff is allowed to prove the wealth, that the jury may infer the influence; a conclusion in many cases by no means legitimate. If the plaintiff is allowed to prove the neighborhood estimate of the defendant's estate, or the quantity, kind, and value of his property, to show his wealth, should not the latter be allowed to show that he is largely indebted and that, if his debts were paid, he would be poor? Again, should he not be allowed to show also that, although his estate was large, his influence was small? We mention these considerations for the purpose not only of showing the unsoundness of the rule under which the court below received this proof, but also to show how inconvenient such a rule would be in practice, if the principle upon which it rests should be extended to other matters to which, in common justice, they should be extended, and to which they are equally applicable. Numberless collateral issues would necessarily arise, to withdraw the attention of the jury from the main one, and, in many cases, lead to injustice. For these reasons, we esteem it unsafe, and cannot adopt it.''

It is perhaps true that a majority of the courts still permit evidence of the reputed wealth of the defendant to be received in slander cases. Many of the courts have, however, insisted upon a limitation to the effect that it is only the general reputed wealth and not the specific proof of actual wealth that is per-

mitted, and most of the courts permitting such evidence agree that it should be expressly guarded and limited by the court's instructions. We are disposed to abrogate the rule entirely that permits specific proof of defendant's reputed wealth in slander suits. The instant case furnishes a good example of the very thing that we think should be avoided. Plaintiff offered proof that defendant's wealth was variously estimated to be $30,000, $40,000, or $50,000. Is the utterance of a man worth $50,000 to be regarded as twice as damaging as that of a man worth only $25,000? And if the slanderer is insolvent, does it follow that no damages flow from his utterances? We are prepared to entirely abrogate the rule permitting such evidence. The general reputation and standing of the defendant may be shown, as bearing upon the influence his words might have in the community; but we do not think that the plaintiff should be allowed to offer proof of defendant's reputed wealth in specific amount, as was done in the instant case. This evidence should have been excluded.

Other matters that are urged in the argument are not likely to occur upon the retrial of the case.

For the errors pointed out, the judgment of the lower court must be reversed and the cause remanded. It is so ordered.— *Reversed and remanded.*

EVANS, C. J., WEAVER, STEVENS, ARTHUR, and DE GRAFF, JJ., concur.